WILLIAM H. MARRIOTT, PLAINTIFF IN ERROR, v. FREDERICK W. BRUNE, JOHN C. BRUNE, AND WILLIAM H. BRUNE, COPARTNERS, TRADING UNDER THE FIRM OF F. W. BRUNE & SONS.

By the eleventh section of the act of Congress passed on the 30th of July, 1846 (Stat. at Large, Pamphlet, page 46), the duties upon imported sugar are fixed at thirty per cent. *ad valorem.*

The true construction of this law is, that the duty should be charged only upon that quantity of sugar and molasses which arrives in our ports, and not upon the quantity which appears by the invoice to have been shipped; an allowance being proper for leakage.

The proviso in the eighth section, viz. " that under no circumstance shall the duty be assessed upon an amount less than the invoice value," is not in hostility with the above construction, because the proviso refers only to the price, and not to the quantity.

A protest made after the payment of the duties charged, and after the case had been closed up, will not enable a party to recover back the money from the collector; but if the protest be made in a single case, with a design to include subsequent cases, and the money remains in the hands of the collector without being paid into the treasury, and it was so understood by all parties, such a protest will entitle the importer to recover the money from the collector.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Maryland.

It was an action of assumpsit brought by F. W. Brune & Sons against William H. Marriott, the collector of the port of Baltimore, to recover back certain duties upon importations of sugar and molasses, which, it was alleged, had been illegally charged, and paid under protest.

The importations were made in various vessels, and at various times, between the 2d of February, 1847, and the 4th of November, 1848.

On the 3d of February, 1847, the Secretary of the Treasury addressed to Mr. Marriott the following letter : —

Marriott *v.* Brune et al.

" *Treasury Department, February 3d, 1847.*

" SIR, — For your information and government, in regard to allowances to be made for deficiencies and leakage on imports, where quantities are ascertained by weighing, gauging, or measuring, I transmit a copy of my instructions to the collector of New Orleans, of the 30th ultimo, fixing the principles on which said allowances are to be made.

" I am, very respectfully, your obedient servant,

" (Signed,)     R. J. WALKER, *Secretary of the Treasury.*

" WM. H. MARRIOTT, Esq., *Collector of the Customs, Baltimore.*

The copy of the instructions referred to in the above letter was as follows : —

" *Treasury Department, January 30th, 1847.*

" SIR, — In reference to the subject stated in your letter of the 7th instant, respecting allowances for deficiencies and invoice value, I would remark, that the law makes no distinction between articles subject heretofore to specific rates of duty, but now liable to *ad valorem* duty, in the mode of ascertaining quantities with a view to fix the values on which the duties are to be assessed. Whatever allowance, therefore, would have been made under former laws on articles subject to specific duty, would inure under existing laws on articles of the same description now liable to *ad valorem* rates of duty. Consequently, where the specific duty was heretofore levied on the actual quantity landed, as ascertained from actual weighing, gauging, or measuring, the same course is to be pursued in regard to the same description of articles under existing rates of duty.

" If, therefore, the quantity of any article falls short of the amount given in the invoice, on due ascertainment, as before stated, an abatement of the duties to the extent of the deficiency should be made. If, on the contrary, it be found to exceed the quantity stated in the invoice, the aggregate cost or value must be made to correspond with such increase, and the duties estimated and assessed accordingly.

" The allowances authorized by the 58th and 59th sections of the act of 2d March, 1799, chap. 128, to which you refer, are still to be allowed. It is therefore to be observed, that the allowance made in the 59th section, of two per cent. for leakage, applies solely to the case of liquors known in commerce as such, and as contradistinguished from liquids of any other description.

" I am, very respectfully, your obedient servant,

" R. J. WALKER, *Secretary of the Treasury.*

" DENIS PRIEUR, *Collector of the Customs, New Orleans.*"

On the 24th of March, 1847, the Treasury Department issued the following circular, through the medium of the telegraph : —

"*E. Mag. Telegraph, March* 24, 1847, *Washington.*

" Sir, — By direction of the Secretary of the Treasury, you are requested to make no allowances for deficiencies to invoices until further advised.

" (Signed,)             Mc. Young, *Chief Clerk.*
" L. M. Chasteau, *U. S. Tel.*"

On the same day, the following circular was transmitted through the post-office : —

*Circular to Collectors and other Officers of the Customs.*

"*Treasury Department, March* 24, 1847.

" The attention of the Department having been specially called to the subject of allowances for deficiency, drainage, leakage, and breakage, under the existing laws, and particularly in reference to the provisions of the 58th and 59th sections of the act of 2d March, 1799, it is decided that in all cases where allowances are claimed under said sections, or either of them, the appraisers, or other proper officers, shall first ascertain whether any deficiency, damage, leakage, or breakage has occurred during the voyage of importation, by stress of weather or other accident at sea, and if so, and the actual leakage, deficiency, or breakage cannot be otherwise ascertained, then to make the allowance as the case may be, for draught, tare, leakage, or breakage, to the extent authorized by said sections ; but if said damage, deficiency, leakage, or breakage, so occurring as before mentioned, shall be found by said appraisers or other officers to be less than the amount authorized by said sections, then the allowance shall only be for the actual damage, deficiency, leakage, or breakage ; and if the amount be ascertained to be actually greater than the amount allowed in said sections, the actual damage, deficiency, leakage, or breakage shall still be allowed, subject to limitations and restrictions imposed by former circulars.

" It must be remembered that draught can be allowed only on articles imported in bulk, and tare on articles imported in casks, barrels, bags, boxes, or other packages, and leakage in the case of liquors ; but when there is an allowance for tare, draught, leakage, or breakage, it must be confined to a separate allowance for one of them, and cannot be extended to two or more.

" Under the 58th section, the allowances for draught or tare

are only permitted on 'articles subject to duty by weight'; and under the 59th section, the allowance for leakage and breakage is confined to liquors 'subject to duty by the gallon'; and there are no duties imposed by the act approved 30th July, 1836, either by weight or gallon; it is an extremely liberal construction to allow in any case any operation whatever to those sections, even to the limited extent permitted by these instructions.

"(Signed,)      R. J. WALKER, *Secretary of the Treasury.*"

On the 9th of April, 1847, Brune & Sons addressed the following protest to the collector at Baltimore : —

                     "*Baltimore, 9th April,* 1847.

"GEN. WM. H. MARRIOTT, *Collector of the Port of Baltimore.*

"Dear Sir, — Having been informed that it is the intention of the Secretary of the Treasury not to make allowance on the payment of duties on such articles as may result here less in quantity, from loss in weight or leakage, than at the time of shipment, for instance, sugar, molasses, &c., and on which a duty *ad valorem* of the invoice is exacted, we hereby protest against the payment of such entire amount of duty, being of opinion that the law at present in force authorizes an allowance for actual loss in weight or gauge, as shown by the difference in the invoice and the returns of the weighers and gaugers of such cargoes after delivery in this port.

"We desire that this protest should extend to all our importations of sugar and molasses since the operation of the present tariff, viz. : —

Water Witch, from Aricibo, entered 17th November, 1846.
J. E. Ridgway, from Aricibo, entered 8th February, 1847.
Juliet, from St. Thomas, entered 15th February, 1847.
United States, from Ponce, entered 26th February, 1847.
San Jacinto, from Havana, entered 26th February, 1847.
Creed, from Cardinas, entered 1st March, 1847.
At New York, O. Thompson, from Aricibo, entered 3d March, 1847.
At New York, Sophia, from Ponce, entered 4th March, 1847.
At New York, Sarah Adams, from Ponce, entered 9th March, 1847.
At New York, Seboris, from Mayaguez, entered 10th March, 1847.
Francis Partridge, from Ponce, entered 2d April, 1847 ; and
Oceola, from Mayaguez, entered this day.

"The protest upon our previous importations was not made

at the time of entry, because we were informed that a fair allowance would be made, but regret now to learn that the original instructions of the Secretary of the Treasury have been countermanded. We are credibly informed that allowances have, in cases similar to the above, actually been made in neighbouring places, and we think ourselves entitled to equal consideration.

"We have the honor to be, dear Sir, your most obedient servants,

"(Signed,)                    F. W. BRUNE & SONS."

On the 28th of June, 1847, Brune & Sons addressed the following letter to the Secretary of the Treasury: —

"*Baltimore, June 28th. 1847.*

"SIR, — We are informed by the collector of the customs of this port, that he will refund us, on our importations of molasses, the differences of duty calculated at thirty per cent. *ad valorem* on invoice amount, and what the same would be, taking the net gauge of the casks here as the basis; in other words, allowing for the loss of molasses on the voyage. The collector says, that he will make this return on importations made from the 1st of May last. Now, we have been protesting against the full duty, which has been exacted from us since a length of time, and we would respectfully inquire whether, in your opinion, we are not entitled to a similar return on all our importations since the 1st of December last, when the present tariff went into operation. If such is your decision, will you direct instructions to that effect to be given to the collector?

"We would further respectfully ask whether you do not think the duty upon sugar (especially Muscovado, which from its nature is subject to a considerable loss on the voyage) should be estimated in the same manner as that on molasses; namely, calculating thirty cents *ad valorem* on the cost of the weight landed here, not on the weight shipped; thus making an allowance for an unavoidable drainage, or rather only charging duty on the pounds of sugar actually brought into the country, and into consumption.

"Hoping you will favor us with an answer to our foregoing inquiries, we remain, &c., &c."

To which letter the following reply was received: —

"*Treasury Department, August 9th; 1847.*

"GENTLEMEN: — In reply to your letter of the 6th instant, covering a copy of your former letter of the 28th of June last,

asking to have the principles of the circular of the 27th of May last applied in the case of importations of molasses made prior to the date of said circular, I beg respectfully to refer you to the inclosed copy of the decision of the Department on a similar application from Moses Taylor and others, importers of molasses at the port of New York, dated the 16th ultimo.

" I would add, that the Department has not deemed it expedient to apply the principles of the circular of the 27th of May last to the importations of sugar.    Very respectfully,
                              " McC. Young,
                    *Acting Secretary of the Treasury.*
" Messrs. F. W. Brune & Sons, *Baltimore.*"

The letter to Moses Taylor and others, referred to in the above letter, was as follows : —

" *Letter from the Secretary of the Treasury to Moses Taylor and others, importers of molasses, New York.*

                    " *Treasury Department, July* 16th, 1847.

" Gentlemen : — The Department duly received the letter signed by yourselves and other importers of molasses, at the port of New York, dated the 2d ultimo, asking to have the principles established by the circular instructions of the 27th of May last, for estimating the loss or deficiency in the article of molasses occasioned by fermentation, stress of weather, or accident during the voyage of importation, applied to all importations of molasses made prior to the date of said instructions, running back to the day the present tariff went into operation.

" In reply, I would respectfully state that the Department does not feel authorized, under the circumstances of the case, to give a retrospective effect to the regulations referred to, as desired in your application.    Very respectfully,
                              " R. J. Walker,
                    *Secretary of the Treasury.*"

On the 5th of June, 1848, the following circular was issued by the Treasury Department : —

                              . " *June* 5th, 1848.

" Your attention is called to circular instructions of the Department, 24th March, 1847, on subject of allowance for deficiency, &c.    It is represented, that at some of the ports, notwithstanding those instructions, allowance is made for tare and draught beyond actual deficiency.    This must in no case be permitted, nor can any allowance be made in any case, whether

Marriott *v.* Brune et al.

under the name of tare, or draught, or otherwise, beyond the actual deficiency which has occurred during the voyage of importation by stress of weather or accident at sea.

".As regards allowance for lost or missing packages, or separate articles, included in the manifest, but not found in vessel at unlading in United States, you will be governed by regulation in circular of 31st December, 1847, p. 1; but in cases where no such package has been lost or missing, no allowance or abatement of duties can be made for any alleged deficiency in any of [the] packages imported, such allowance or abatement being exclusively confined to actual deficiency of any article which may be discovered in packages when opened, as prescribed in last proviso to 21st section of act of 30th August, 1842, it being observed, as enjoined in circular of 18th December, 1847, that such allowance can then only be made in cases where [it] satisfactorily appears to appraisers that the package had not been before opened after shipment for United States, and where the package has not passed out of custody of officers of customs."

The general protest made on the 9th of April, 1847, by Messrs. Brune & Sons, has been already set forth. Afterwards they made a special protest in each of six several importations, but there were thirteen other importations made after the 9th of April, 1847, respecting which they relied upon the efficacy of the general protest of that day.

After the decision of the court in Cary *v.* Curtis, 3 Howard, 236, Congress passed an act, on the 26th of February, 1845, which, among other things, provides: — "Nor shall any action be maintained against any collector, to recover the amount of duties so paid under protest, unless the said protest be made in writing, and signed by the claimant, at and before the payment of such duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." See this act, and the second section of the act of 1839, which it was designed to alter and explain, 5 Stat. at Large, 349.

One of the questions before the court was, whether under this act the general protest made on the 9th of April, 1847, would cover importations made after that day.

On the 4th of November, 1848, Brune & Sons brought their action against Marriott in the Circuit Court. At April term, 1849, the cause came on for trial, when the following statement of facts was agreed upon by the counsel. It is not necessary to copy the tabular statements referred to, because the explanation of them is deemed sufficiently intelligible.

### " *Statement of Facts.*

" It is admitted·that the schedule A, herewith filed,.to be taken as part of this statement, in its first, second, and third columns, correctly exhibits the importations of sugar and molasses by the plaintiffs into the port of Baltimore, between the 8th of February and the 8th of November, A. D. 1847,.both inclusive, and likewise the names of the vessels by which, and the places from which,. such importations were made, and the dates of the entries of such importations; that column four exhibits the kind of goods so imported, and how they were contained; that column five exhibits.the quantity in pounds of the sugar, and in gallons of the molasses, shipped in the West Indies, as stated in the invoices which accompanied such importations; that column seven exhibits the dutiable value in foreign currency (including all costs and charges) of the goods mentioned in the said invoices; which in column eight is changed into American currency, and upon this value. duties were computed and exacted by the defendant of the plaintiffs, and paid by them in order to get possession of their said goods, and that the amounts of duties so exacted and paid are stated in column nine.

" It is further admitted, that all the goods imported by the plaintiffs, as aforesaid, after their arrival and entry at the custom-house, were by the direction of the .defendant submitted to the examination of weighers and gaugers, officers belonging to the custom-house, and who made returns of the weight and gauge respectively of the goods submitted to them, which returns are correctly exhibited in column six.

" It is further admitted, that if column eight correctly exhibits· the value at the place of shipment of the quantity of goods mentioned in the invoices, including costs and charges, and exhibited in column five as having been shipped, then column ten exhibits the proportionate value at the place of shipment of the diminished quantity of goods, as ascertained by said officers to have arrived in Baltimore, and exhibited in column six, including their proportionate share of costs and charges; that column eleven exhibits the amount of duty, at thirty per cent. *ad valorem,* on the goods as valued in column ten; that column twelve exhibits the excess of duties alleged by the plaintiffs to have been overpaid by them, and the aggregate of the sums in this column' constitutes the claim, without interest, which they seek to recover in this action.

, " The plaintiffs also claim interest on the alleged over-payments appearing in column twelve, from the time of such pay-

ments respectively, and which interest is to be hereafter correctly ascertained.

" It is agreed that column ten of schedule B exhibits the value in American currency of the deficiency of the goods upon arrival, as compared with the invoices, agreeably to the ascertainment of the actual quantity of goods arrived, by the gauger and weigher respectively, no account being taken of costs and charges, except in the case of molasses, the proportion of commission being allowed on that article.

, " It is also agreed, that column eleven in said schedule exhibits the amount of thirty per cent. on the value of such deficiency so exhibited.

" It is further admitted, that the above-mentioned deficiency between the quantity of goods which arrived, according to the returns of the government officers; and that appearing in the invoices, occurred on, and was produced by, the voyage of importation. And it is also admitted, that allowances for damage to sugar and molasses injured by a peril of the sea on the voyage of importation are calculated in the mode contended for by the plaintiffs as the true mode of ascertaining their alleged overpayments.

" It is further admitted, that upon the 9th of April, 1847, the plaintiffs addressed and delivered to the defendant the general notice or protest in writing signed by them, and herewith filed, marked C; and likewise, at the time of the entries of the cargoes of the Uzardo, Samuel G. Mitchel, Isabella, G. W. Russell, W. J. Watson, and Aristes, respectively addressed and delivered to the defendant a special notice or protest in writing, signed by them, and copies of which protests are herewith filed, marked D.

" It is further submitted, whether the protest of the 9th April, 1847, can be applied to the excess of duties claimed to have been paid unjustly upon the cargoes of any vessels on whose cargoes the deficiencies were ascertained and finally adjusted before the date of said protests, and whether it can be applied to the cargoes of those vessels whose deficiencies were not finally adjusted by the impost clerk, and whose duties were not finally charged to the collector in his accounts until after said protest, although said deficiencies were ascertained in fact by the gauger and weigher respectively; and whether such general protest can be applied to any subsequent importations and payments of the plaintiffs in regard to which there was no especial protest.

" And it is admitted, that the deficiencies upon all the cargoes arriving before the Sarah Adams had been ascertained by

the gauger and weigher·respectively, and returned by them to the defendant, and had been finally adjusted by the impost clerk, and that the duties on such cargoes had been charged to the defendant in his accounts with the treasury before the 9th of April, 1847; but it is admitted, that although the gauger and weigher had returned to the defendant the deficiencies on the cargoes of the Sarah Adams, Sebois, and Magnolia, yet that the impost clerk, whose duty it is to compare such returns with the invoices, did not act thereon and ascertain and adjust the true amount of duties due on such cargoes, and report thereon to the defendant, until after the said 9th of April, 1847.

"And it is further admitted, that the gauger and weigher did not make their returns of the deficiency in the cargo of the Frances Partridge until the 10th of April, 1847.

"It is also admitted, that the custom of the importing merchants of Baltimore in the sale of sugar and molasses is as follows, viz. : — Sugar is sold per pound, that is, at a given price per hundred pounds, and molasses per gallon, upon the quantity returned by the weigher and gauger as having been imported, without any reference in either case (as to the price) whether a deficiency in quantity has been suffered on the voyage of importation or not, and also that in no case is the cask in which the sugar or molasses is contained sold separately by said importing merchants.

"And it is also admitted, that in all importations of sugar from Porto Rico no charge for casks appears in the invoices, but that in importations of molasses from that island, and of sugar and molasses from Cuba, a separate charge is made for the cask.

"It is agreed, that any acts of Congress, and the instructions of the Secretary of the Treasury, and his correspondence with the plaintiffs, may be referred to by either party for whatever purpose they may be legally available.

"Upon the foregoing statement of facts, the questions to be submitted to the court are, —

"First. Whether the amount of duties, or any part thereof, exacted by the defendant and paid by the plaintiffs was illegally exacted, by reason of being charged upon the entire amount and value of the goods appearing in the invoices to have been shipped, without any allowance for the deficiency in weight or gauge from the voyage of importation, as shown by the returns of the government officers ; and,

"Secondly. Whether the plaintiffs can recover back in this suit the duties so exacted, [or] any part thereof.

"If upon these questions the opinion of the court should be

in favor of the plaintiffs, then the court shall give judgment for the plaintiffs, with costs; but if on these questions the opinion of the court should be in favor of the defendant, then judgment shall be entered for the defendant, with costs. And it is further agreed, that if the judgment in this case should be in favor of the plaintiffs, the amount, including interest, for which the judgment shall be entered up may be hereafter calculated, in conformity with the principles which the court shall decide to govern the case, with liberty to either party to appeal from the judgment of the court, and with the further agreement, as part of this statement, that the court shall be at liberty to draw such inferences from the facts above stated as a jury might or would draw therefrom, and that either party shall hereafter have power to add to this statement any fact admitted by the other party to exist, which may be deemed essential by the court for the proper decision of the above questions.

"BROWN & BRUNE, *for Plaintiffs.*
W. L. MARSHAL, *for Defendant.*"

Upon this statement of facts the opinion of the Circuit Court, as delivered by Mr. Chief Justice Taney, was, that the allowance for drainage and leakage ought to be made, and that the reduction ought to be made according to the dutiable value of the portion lost. With respect to the sufficiency of the protest, the court held that the protest of 9th April, 1847, could not apply to payments previously made, and the plaintiff was not entitled to recover them; but that it covered all cargoes where the duties had not before been finally assessed and adjusted by the collector.

The court thereupon entered judgment for the plaintiffs, on the case stated, for the damages laid in the declaration, and costs, to be released on payment of $ 5,274.29, with interest from the 19th of May, 1849, until paid, and costs of suit.

From this judgment Mr. Marriott sued out a writ of error, and brought the case up to this court.

It was argued by *Mr. Johnson* (Attorney-General), for the plaintiff in error, and *Mr. Brune,* for the defendants in error.

*Mr. Johnson* made the following points:—

1. That the duties were properly assessed upon the amount of the invoices, under the eighth section of the Tariff Act of 1846.

2. That the loss of the sugars from drainage entered into the estimation of their value at the time of purchase, and their cost to the importer at the time of landing in this country.

53 *

3. That the general protest of 9th April, 1845, is not suf-ficient to cover the duties on sugars imported subsequent there-to, but that a protest in each subsequent importation is re-quired by law. Act of 26th February, 1845 (5 Statutes at Large, 727).

4. That the protest must be made at and before the payment of the estimated duties, this payment being necessary to obtain the goods by the importer. Act of 26th February, 1845 (5 Statutes at Large, 727); § 49 of the Act of 2d March, 1799 (1 Statutes at Large, 664).

In the course of his argument, *Mr. Johnson* referred to the following Treasury circulars, in addition to those above stated : — Mr. Secretary Walker to Collectors and other Officers of the Customs, 25th November, 1846 (1 Mayo, 349); 24th March, 1847 (Ibid. 360); 27th May, 1847 (Ibid. 362); 31st December, 1847 (Ibid. 404, *et seq.* ; see *voce* " Allowances," 405 ; see also *voce* "Invoices," 407); 5th June, 1848 (printed copy); 12th June, 1848 (printed copy); 1st February, 1849 (printed copy). Mr. Secretary Meredith, 27th July, 1849 (printed copy); 10th August, 1849 (printed copy).

*Mr. Brune,* for the defendants in error, made the following points : —

1. That they were only chargeable by law with duties upon the value of quantities of goods actually imported by them, as shown by the returns of the weighmasters and gaugers, and not upon the value of any portions of such goods lost upon the voyage of importation.

2. That, as there is no evidence in the case, by appraisement or otherwise, of any undervaluation in the invoice value of the goods shipped at the foreign ports, the invoice values must be held to be the true dutiable values of the goods so shipped ; and, as full duties have been exacted from the defendants in error upon the whole quantity of goods shipped, and as if it had all arrived, without any allowance or deduction for such portion of such goods as was lost on the voyage, they may now recover the sums exacted by way of duty upon the portion of goods so lost.

3. That the defendants in error, by the protest of the 9th of April, 1847, and their other protests subsequent thereto, have sufficiently complied with the provisions of the act of 1845, ch. 22 ; and under them the plaintiff in error is liable in this action for the sums exacted by way of duty upon goods lost by leakage or drainage on the voyage of importation, belonging to all the cargoes entered on and after that day, as well as belong-

Marriott *v.* Brune et al.

ing to cargoes previously entered, but which were not then finally adjusted.

In the argument of the first and second points, the counsel referred to the following acts of Congress : — 1799, ch. 22, §§ 21, 49, 72 (1 Stat. at Large, 627); 1818, ch. 79, §§ 4, 5, 9, 15 (3 Stat. at Large, 433); 1823, ch. 21, §§ 1, 4, 5, 16 (3 Stat. at Large, 729); 1828, May 19, § 8 (4 Stat. at Large, 273); 1832, July 14, §§ 7, 15 (4 Stat. at Large, 591, 593); 1842, ch. 270, §§ 16, 21, 24 (5 Stat. at Large, 548); 1846, July 30, §§ 1, 4, 8.

And to the following acts, authorizing allowances : — 1799, ch. 22, §§ 52, 58, 59 (1 Stat. at Large, 627); 1818, ch. 79, §§ 15, 16 (3 Stat. at Large, 433); 1823, ch. 21, § 21 (3 Stat. at Large, 729); 1842, ch. 270, § 21 (5 Stat. at Large, 548), to be taken in connection with § 22 of the act of 1818, and § 15 of the act of 1823, just cited.

And to the following acts in construction of the proviso of the eighth section of the act of 1846, viz. : — 1818, ch. 79, §§ 9, 11, 12, 15 (3 Stat. at Large, 433); 1823, ch. 21, §§ 13, 14, 21 (3 Stat. at Large, 729).

For the construction of the term *imports*, to United States *v.* Lyman, 1 Mason, 482; United States *v.* Lindsey, 1 Gallison, 365; United States *v.* Vowell, 5 Cranch, 368.

Upon the third point, to the acts of 1839, ch. 82, § 2 (5 Stat. at Large, 348); 1845, ch. 22 (5 Stat. at Large, 727); and to Elliot *v.* Swartwout, 10 Peters, 137; Swartwout *v.* Gihon, 3 Howard, 210, 239 – 241, 255; Casy *v.* Curtis, Ib. 251.

Mr. Justice WOODBURY delivered the opinion of the court.

The plaintiff in error in this case seeks to reverse a judgment below, which enabled the Brunes, as importers of certain sugars into Baltimore, to recover back from the collector a supposed excess of duties, which had been paid upon them. In some of the cargoes there was a small quantity of molasses, but both are regarded as resting on the same basis. The points involved are three in number.

1. What should be the true amount of duties in this case under our revenue system, looking to the general legislation on the subject, and to the nature of the transaction ?

2. Whether the result which may be thus obtained should be affected or prevented by the special proviso in the eighth section of the law of 1846 ?

3. Whether the protests, filed by the importers, were such as to enable them in point of law to recover back all which has been allowed by the court below ?

In considering the first question, it is to be noticed that the

duties to be paid on imported sugar are now regulated chiefly by the act of Congress of July 30th, 1846. (9 Stat. at Large, 46.) By the eleventh section of that act the duties are fixed at thirty per cent. *ad valorem.* The collector here exacted that rate on the quantity of sugar named in the invoice and shipped from foreign ports. But the quantity which arrived and was entered here was less than that shipped, by drainage and waste, to the extent of near five per cent.; and the defendants contended that the duty should be paid only on that diminished quantity.

The general principle applicable to such a case would seem to be, that revenue should be collected only from the quantity or weight which arrives here. That is, what is *imported*, — for nothing is imported till it comes within the limits of a port. (See cases cited in Harrison *v.* Vose, 9 Howard, 372.) And by express provision in all our revenue laws, duties are imposed only on imports from foreign countries; or the importation from them, or what is imported. (5 Stat. at Large, 548, 558.) The very act of 1846 under consideration imposes the duty on what is "imported from foreign countries." (p. 68.) The Constitution uses like language on this subject. (Article 1, §§ 8, 9.) Indeed, the general definition of customs confirms this view; for, says McCulloch (Vol. I. p. 548), "Customs are duties charged upon commodities on their being imported into or exported from a country."

As to imports, they therefore can cover nothing which is not actually brought into our limits. That is the whole amount which is entered at the custom-house; that is all which goes into the consumption of the country; that, and that alone, is what comes in competition with our domestic manufactures; and we are unable to see any principle of public policy which requires the words of the act of Congress to be extended so as to embrace more.

When the duty was specific on this article, being a certain rate per pound, before the act of 1846, it could of course extend to no larger number of pounds than was actually entered. The change in the law has been merely in the rate and form of the duty, and not in the quantity on which it should be assessed.

On looking a little further into the principles of the case, it will be seen that a deduction must be made from the quantity shipped abroad, whenever it does not all reach the United States, or we shall in truth assess here what does not exist here. The collection of revenue on an article not existing, and never coming into the country, would be an anomaly, a

mere fiction of law, and is not to be countenanced where not expressed in acts of Congress, nor required to enforce just rights.

It is also the quantity actually received here by which alone the importer is benefited. It is all he can sell again to customers. It is all he can consume. It is all he can reëxport for drawback. (1 Stat. at Large, 680 – 689; 4 Stat. at Large, 29.)

Nor is his sugar improved in quality by the drainage, so as to raise any equity against him by it. The evidence in the ensuing case from New York, which was argued with this, shows that the article usually becomes of a worse color and quality than before, though if not drained at all it might ferment and become still more inferior.

Indeed, the reasonableness of this deduction seems countenanced by various other acts of Congress. In certain instances, where a loss usually occurs, and where a general and reasonable rate of reduction could be prescribed, they have authorized it expressly in several cases of the character referred to.

Thus, in the case of liquors, a certain fixed per cent. is deducted in the measure, in all cases, for leakage (1 Stat. at Large, 166), and still more is deducted for breakage, when in bottles. (1 Stat. at Large, 672.) So another reduction is made in weight for tare and draft. (1 Stat. at Large, 166.) The last should be *draff*, meaning dust and dirt, and not what is generally meant by "draught" or "draft."

But beside these instances, in cases of an actual injury to an article arriving here in a damaged state, a reduction from the value is permitted expressly on account of the diminished value. 1 Stat. at Large, 41, 166, 665.

The former cases, referred to for illustration, rest on their peculiar principles, and allowances in them are made by positive provisions in acts of Congress, even though the quantity and weight of the real article meant to be imported should arrive here. Because, knowing well that the whole is not likely to arrive, and being able to fix, by a general average, the ordinary loss in those cases with sufficient exactness, the matter has been legislated on expressly.

Yet there are other cases of loss, from various causes, which may be very uncertain in amount, for which no fixed and inflexible rate of allowance can be prescribed, and which must, therefore, in each instance, be left to be regulated by the general provisions for assessing duties, and the general principles applicable to them, as before explained. Consequently, where a portion of the shipment in cases like these does not arrive here, and hence does not come under the possession and cog-

nizance of the custom-house officers, it cannot, as heretofore shown, be taxed on any ground of law or of truth and propriety, and does not therefore require for its exemption any positive enactment by Congress.

Such is the case of a portion being lost by perils of the sea, or by being thrown overboard to save the ship; or by fire, or piracy, or larceny, or barratry, or a sale and delivery on the voyage, or by natural decay. If there be a material loss, it can make no difference to the sufferer or the government whether it happened by natural or artificial causes. In either case, the article to that extent is not here to be assessed, nor to be of any value to the owner.

To add to such unfortunate losses, the burden of a duty on them, imposed afterwards, would be an uncalled for aggravation, would be adding cruelty to misfortune, and would not be justified by any sound reason or any express provision of law. On the contrary, Congress, in several instances, when the articles imported actually arrived here, and were afterwards destroyed by fire before the packages had been opened and entered into the consumption of the country, have refunded or remitted the duties. 2 Stat. at Large, 201; 5 ibid. 284; 6 ibid. 2.

But much more should duties not be exacted on what was lost or destroyed on its way hither, and which never came even into the possession or control of the custom-house officers, and much less into the use of the community.

Something has been urged in argument on the estimate made by the appraisers, and the final character attached to it. However that may be, if one was made in this case it could be final only as to the price of the sugar abroad, and not as to the quantity or weight reaching this country. The latter is fixed by another class of officers, authorized by law for that purpose; and if the appraisers undertake to fix it, their action in that respect is *coram non judice*, and a nullity.

The price abroad in this case depended on a variety of circumstances, as the size of the crop, the urgency of the demand in the market, the quality of the article, &c.; and the invoice may be *primâ facie* evidence of the result of these and other causes in establishing that price; but for a quarter of a century it has been departed from by the appraisers, if the facts ascertained by them will warrant it; though their action and decision as to the price are understood not to be here in this respect in controversy.

The various circulars from the Treasury Department, which have been referred to, and which have been construed in some

Marriott *v.* Brune et al.

cases to permit the deduction of the quantity not really arriving in this country, and in others to forbid it, are entitled to much respect in deciding on the true meaning of the revenue laws. But when contradictory or obscure, they furnish less aid, and are never decisive or incontrollable. Their design is, of course, to protect the revenue from evasions, and the policy of the courts is the same, when deciding how the laws ought to be executed on these subjects.

But as Congress wishes to foster an honest and honorable commerce by its laws, no less than obtain revenue, it is neither the true policy nor right of Departments or of courts, nor is it presumed to be their desire, to thwart the views of Congress, or embarrass mercantile business, when not attended by equivocation and fraud, or to throw doubts and difficulties over the liberal course proper to be pursued generally towards the community in any branch of trade.

Thinking, then, as we do, that making this deduction is not only the legal, but the more reasonable and liberal course, it has our full approbation.

The second point of inquiry, concerning the restrictive effect of the proviso on the eighth section of the act of 1846, has been very earnestly urged as opposed to a construction allowing this deduction. It is argued, that allowing it would usually reduce the aggregate value below the invoice, and that this is prohibited by the words of the proviso, enacting, "That under no circumstance shall the duty be assessed upon an amount less than the invoice value, any law of Congress to the contrary notwithstanding." 9 Stat. at Large, 43.

But this proviso apparently relates to the enactment in the section where it stands, concerning the owner, or his agent, raising the invoice or assessment to "the true market value of such imports in the principal markets of the country whence the importation shall have been made."

If, however, it was meant to be general, as seems more likely from previous laws, and to hold the owner to his invoice in all cases, by a species of estoppel, so far as not to let it be made lower than was originally admitted in the invoice, then the restriction manifestly relates to the price only. He need not be estopped about the quantity in the invoice, as the duty is not assessed on the quantity abroad, but on the quantity reaching home, and entered and ascertained by law by the measurer and weigher here. But he might properly be in respect to the price, as it is on the price abroad, and charges added, that the duty is by law to be assessed.

The language of the proviso is not artistic, nor very clear,

but, from the considerations just stated, we think the words "less than the invoice value" must mean the same as invoice price. It can, too, bear no other construction consistent with its language and probable design, and the evident design, looking to all the circumstances, must govern. 16 Peters, 367; Paine, C. C. 11; Bac. Abr. *Statute*, 1.

But what is calculated to remove all doubt, as to the true meaning of the proviso, is a clause in the act of April 20th, 1818, on this same subject. 3 Stat. at Large, 437.

The twelfth section provides, that, in "all cases where the appraised value shall be less than the invoice value, the duty shall be charged on the invoice value in the same manner as if no appraisement had been made."

This is plain and intelligible, and by value refers, of course, to the price in the invoice, as that is to be fixed by the appraisers. Making the deduction, then, which was made below in this case, was no violation of this proviso, as it was a reduction in the quantity below the invoice, and not in the price.

The last question relates to the validity of the protests to the extent held in the Circuit Court.

There is no pretence that the protest by letter, dated the 9th of April, 1847, was not good in form and substance for all the cargoes which had then been entered and the duties not paid. Though in some of the previous entries no protest had been made at the time, under an impression that the duties on what had been lost would voluntarily be refunded, yet, where the payment had been closed up, the court did not feel justified, nor do we, in embracing those cases under any existing equities, without the written protest required by the act of Congress. (5 Stat. at Large, 727.) But where the duties had not been closed up in any cases, when the written protest in April was filed, — though the preliminary payment of the estimated duties had taken place, — the court justly considered the protest valid. Because, till the final adjustment, the money remains in the hands of the collector, and is not accounted for with the government, and more may be necessary to be paid by the importer.

The question as to subsequent entries being covered by this protest is not so clearly in favor of the importer. But as they all depended on a like principle, — as from the circulars of the Department some doubt existed whether the excess of duties would not voluntarily be refunded, — as the amounts in each importation were small, and both parties thus became fully aware that the excess in all such cases was intended to be put in controversy and reclaimed, — we are inclined to think this written

protest may fairly be regarded as applying to all subsequent cases of a like character, belonging to the same parties.

Judgment affirmed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs and damages at the rate of six per centum per annum.