### In re J. D. SPRECKELS & BROS. CO.

(Circuit Court, N. D. California. November 5, 1900.)

#### No. 12,302.

1. CUSTOMS DUTIES—REBATES—MATERIALS FOR SHIP FOR FOREIGN TRADE.

The provision of section 8 of the revenue act (26 Stat. 613) requiring the duty on materials imported in bond for use in the construction or equipment of vessels to be paid in case the vessel shall be employed in the coastwise trade of the United States for more than two months in any one year, must be given a reasonable construction in harmony with the general spirit and purpose of the exemption contained in the section, permitting the use of such materials free of duty when the vessel is to be employed in the foreign trade; and it cannot be held to require the payment of the duty before the vessel is permitted to engage in the coastwise trade after the material exempted has become worn out, or has ceased to be useful or serviceable for the purpose for which it was used.

2. SAME—CANCELLATION OF CHARGE AGAINST VESSEL—WORN-OUT MATERIALS.

The treasury department, under its construction of said section, and of Rev. St. § 2513, of which it is virtually a re-enactment, having customarily allowed the cancellation of the duty charged against a vessel whenever it was made to appear that the article against which it was charged had become unserviceable, a shipowner, under such rulings, should be allowed a cancellation of the duty on metal sheathing used on the wooden hull of his vessel, on his application therefor in contemplation of a coastwise voyage, where such sheathing has been in constant use for more than 4 years, where it is shown that the life of such metal sheathing and its effectiveness does not continue longer than from 2½ to 3 years, notwithstanding he has allowed it to remain on the vessel, and accepted the consequent lower rating.

On Petition for Review of Decision of the Board of General Appraisers.

Andros & Frank, for petitioner.

Frank L. Coombs, U. S. Atty., and Marshall B. Woodworth, Asst. U. S. Atty.

MORROW, Circuit Judge. This is a petition by the J. D. Spreckels & Bros. Company, a corporation, for a review of the decision of the board of United States general appraisers, and to have returned

to said corporation the amount of certain duties paid by it under protest upon yellow metal sheathing, under the revenue act of October 1, 1890 (26 Stat. 613). The rate of duty prescribed by section 8 thereof for this class of merchandise is 35 per cent. ad valorem. The portion of the section applicable to the controversy now before the court reads as follows:

"That all lumber, timber, hemp, Manila, wire rope, and iron and steel rods, bars, spikes, nails, plates, tees, angles, beams and bolts, and copper and composition metal which may be necessary for the construction and equipment of vessels built in the United States * * * for the purpose of being employed in the foreign trade, including the trade between the Atlantic and Pacific ports of the United States, after the passage of this act, may be imported in bond, under such regulations as the secretary of the treasury may prescribe, and upon proof that such materials have been used for such purpose, no duty shall be paid thereon. But vessels receiving the benefit of this section shall not be allowed to engage in the coastwise trade of the United States more than two months in any one year, except upon the payment to the United States of the duties on which a rebate is herein allowed."

On April 21, 1891, the petitioner herein withdrew the merchandise in question from bond, using it at the port of San Francisco to sheathe the hull of the American bark Alden Besse, owned by the petitioner. Eleven days later the rebate of duty on said merchandise, amounting to $528.04, was duly indorsed on the register of said vessel, in accordance with the provisions of the above section. Thereafter the vessel was continually engaged in the foreign trade until July 18, 1895. On that day, the bark then being in the port of San Francisco, the petitioner, following the custom in similar cases, requested the collector of customs at that port to cancel the entry of said charge for duty upon the register of said vessel upon the ground that the said sheathing was so worn that it was practically useless. It appears that the condition and the position of the vessel at that time were such that an examination of the sheathing could not be made, and the vessel departed for Alaskan waters without any action having been taken by the collector upon the application for the cancellation of the duty charge. The vessel returned to San Francisco on September 24, 1895, the duration of her voyage being six days in excess of the period prescribed by the statute. The collector of customs at the port of San Francisco upon the next day demanded the payment of the duty of 35 per cent. ad valorem upon said sheathing, amounting to $528.04. This amount the petitioner paid, but filed a written protest against the action of the collector upon the ground that it was an unwarranted exaction, claiming that the sheathing was of no practical use, and no protection to said vessel. On October 2, 1895, an examination of the sheathing was made by an examiner of merchandise, who reported that all but 5 per cent. of the sheathing was in fair condition, and would last for several years. The petitioner again protested, and requested a re-examination of the metal by some one competent to make a just report, and on February 12, 1896, the collector of customs caused such re-examination to be made by the same examiner as before, who reported that six feet of metal sheathing, extending the entire length of the starboard side of the vessel, was exposed to view, and that

this sheathing, with the exception of one plate, he found in apparent good condition. To this report the petitioner filed a further protest, and the matter was thereupon referred to the board of United States general appraisers. This board overruled the protest of the petitioner, the grounds of the decision being stated as follows:

"In this case the suit of metal is found in use upon the vessel. * * * We hold that, so long as the suit of metal is upon the vessel, the liability to the payment of the duty becomes fixed upon the vessel having voluntarily engaged in coasting more than two months in any one year."

The case is now brought into this court for review, and to determine whether or not the charge of duty should have been canceled by the collector of customs, as requested by the petitioner.

The exemption from customs duties made by the section of the statute under consideration is evidently one carrying out the general policy of the government in the interest of foreign commerce and deep-sea navigation. Similar provisions have appeared in former revenue acts with reference to the class of merchandise in said section described. The language used in this section is clear and distinct in the exemption it provides in favor of the free importation of material used in the construction and equipment of vessels in the United States for foreign account and foreign trade, including trade between the Atlantic and Pacific ports, but the scope of the limitation placed upon vessels using such materials and engaging in the coastwise trade is not so clear. That they cannot engage in the coastwise trade more than two months in the year is certain, but the extent of the use of the material contemplated by the exemption has not been made so clear. It could hardly have been intended by congress to permanently exclude from the coastwise trade for ten months in the year a vessel built in the United States because it had used in its construction or equipment, free of duty, some foreign materials, the use or life of which was of short duration. The statute specifically provides that "upon proof that such materials have been used for such purpose [construction and equipment], no duties shall be paid thereon." In what way is this exemption qualified by the provision "that vessels receiving the benefit of this section shall not be allowed to engage in the coastwise trade of the United States more than two months in any one year except upon payment of the duties"? Suppose an imported Manilla or wire rope has been completely used up on board of a vessel, must the duties be paid upon such an article, notwithstanding its destruction, to secure the privilege of engaging in the coastwise trade for more than two months in the year? The requirement of the payment of duty on imported material used in the construction and equipment of a vessel appears to be a reasonable regulation, if the material continues to exist in a useful condition. But if it is worn out, and its life has gone as a useful or serviceable article, the payment of the duties does not appear to be a reasonable requirement within the spirit and purpose of the regulation. There is no question but that the coastwise voyage of the Alden Besse exceeded in time the limitation prescribed by congress. And it may be conceded at the outset that, if any considerable portion of the life of the sheathing remained

104 F.—56

at the time this coastwise voyage was made, the article could not, in a revenue sense, be said to have been "used," and there would, therefore, be no exemption, and the duty would properly be collected. But was the board of general appraisers right in holding that, "so long as the suit of metal is upon the vessel, the liability to the payment of the duty becomes fixed upon the vessel having voluntarily engaged in coasting more than two months in any one year"? Is there any warrant for the assumption that congress intended to impose a duty upon material after it had been used and become practically worthless, simply as a penalty for its retention upon the vessel? The statute is silent upon this point, and the inference to be drawn from this silence is purely a matter of construction, to be determined by the general spirit and intent of the statute. As it is not to be presumed that an injustice was within the legislative intent, wherever a statute is capable of two constructions, one of which would work manifest injustice and the other would work no injustice, it is the duty of the courts to adopt the latter. Lau Ow Bew v. U. S., 144 U. S. 47, 59, 12 Sup. Ct. 517, 36 L. Ed. 340, and cases cited. In accordance with these principles, the court will consider that the section in controversy applies only to material that is useful for the purpose for which it is intended to be used. The question for determination here thus becomes essentially one of fact whether or not the sheathing·on the Alden Besse was of practical value at the time the duty was collected upon it.

Section 8 of the revenue act of October 1, 1890, is virtually a reenactment of section 2513 of the Revised Statutes; and while in the former statute, as in the present, no point of time is prescribed after which the charge of duty shall be canceled, the treasury department appears to have recognized the worthlessness of metal sheathing after a certain period of use, and to have allowed a cancellation of the charge of duty at such time. In the case of The Levi G. Burgess, Treas. Dec. 8422, though the metal sheathing had not been in use upon the vessel for two years, the secretary of the treasury allowed the duties collected on rebate to be refunded, because the metal was considered worthless for the purposes for which it was originally withdrawn. And in December, 1879, in a letter from the assistant secretary of the treasury to the collector of customs at Philadelphia with regard to an application for cancellation of duties on sheathing, in contemplation of a coastwise voyage, it was stated that "the department understands that it is a recognized fact that sheathing metal in constant use lasts but two or three years." Treas. Dec. 4363. No decisions upon this point of more recent date have been noted, but the custom of cancellation of duty when the value of the metal is practically destroyed is the same at the present time, and it was in accordance with this custom that the petitioner applied to the collector of customs before the bark entered upon the coastwise voyage. The contemporaneous construction of a statute by the executive officer of the government charged with its execution is entitled to great respect. Marriott v. Brune, 9 How. 635, 13 L. Ed. 282; U. S. v. Graham, 110 U. S. 219, 3 Sup. Ct. 582, 28 L. Ed. 126; U. S. v. Johnston, 124 U. S. 236, 8 Sup. Ct. 846, 31 L. Ed.

389; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363. The evidence before the court shows the weight of opinion to be that metal sheathing is used upon the hulls of wooden vessels to protect them from the teredo, and to prevent them from fouling; that, while a certain quality remains in the metal, which is denominated its "life," the surface of the metal remains smooth, and the various forms of marine crustacea will not attach themselves to it; that the action of the sea water causes a chemical change in the quality of the metal, destroying its life in time, rendering it brittle, and easily broken, and as liable to fouling or the attachment of these crustacea as is the wood when unprotected by metal. It also appears that the teredo and other worms will force their way through holes in the metal of the minutest size, and work great injury to the wood beneath. An insurance surveyor for Lloyd's Register and for the Wheat Tariff Association, a combination of insurance companies, testifies that a ship, to retain her first class in this port, must be remetaled within 30 months, otherwise insurance companies will not take risks on a dry or perishable cargo carried by such vessel. It further appears that the maritime insurance companies at San Francisco, when allowing claims for repairs to metal sheathing on ships insured by them, deduct $2\frac{1}{2}$ per cent. per month of the cost of the metal for every month it has been in use up to the extent of 40 months, after which time no allowance is made. In the policies of Boston companies this limit is made at three years. This is a general clause in policies covering wooden ships sheathed with metal. Various shipowners testify that the real value of the metal sheathing is usually gone in from 30 months to 3 years; that, where a first-class rating is of no object to the owner, the metal is sometimes allowed to remain on the vessel for a longer time, until it is convenient to meet the expense of stripping, caulking, and remetaling, though the sheathing is recognized to be of no practical value during this extended time. One or two instances were noted by the United States attorneys where ships had been in service for many years without remetaling, but the testimony developed the fact that a great amount of patching had been done with new plates, at various times, so that but little, if any, of the original sheathing remained. The collector of customs based his action in the collection of duty in the present case upon the report of an examiner of merchandise, who examined the metal sheathing in question. This report was not made under oath, and the examiner admitted upon the hearing before the referee that he knew nothing whatever about copper sheathing. He testified that upon his first examination of the bark Alden Besse he noticed that some of the metal was stripped off, and that there were barnacles on the woodwork; that there were also barnacles and marine growth on the metal sheathing. He reported that he was not familiar with the merchandise examined, and requested the assistance of another examiner. A day or two later he made a second examination of the vessel in company with another examiner. The vessel's bottom had been cleaned, and they were putting metal patches on it. He and his associate counted the plates, and found that about 5 per cent. of the original plates were gone, and new ones being put

on in their places. He did not take into consideration the thickness of the metal remaining, or its condition other than as it appeared from this cursory examination. He was not informed as to the elements of value to be noted in his appraisement, and appears to have considered a report upon the proportion of old metal remaining and its apparent unbroken condition a fulfillment of all requirements. His associate testified that he did not understand the order of the collector to include a report upon the value of the metal, or an estimate of the wear and tear upon it, and therefore confined his examination to the quantity of new metal required to replace that which was gone, and to the condition of the old metal remaining with regard to its being intact. To this extent he concurred in the report of his associate examiner. It is urged by counsel for the government that the fact that the vessel continued in service for nearly a year after this date without remetaling is conclusive evidence that the metal sheathing in question was of practical value at the time of the appraisement. In the light of the evidence of experienced shipowners, however, this fact should be regarded as evincing the option of the petitioner to temporarily accept the consequences of lower rating, a different class of cargo, and slower sailing, rather than as proof of the value of the metal. The preponderance of evidence justifies the conclusion that the metal sheathing in question had lost its practical value for the purpose for which it was intended at the date the duty was collected upon it. The decision of the board of United States general appraisers is therefore reversed, and a judgment will be entered in accordance with this opinion.