58 CCPA

**HARRY N. BLOOMFIELD CO.,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5371.**

United States Court of Customs and Patent Appeals.

June 10, 1971.

---

Walter E. Doherty, Jr., Boston, Mass., for appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Gilbert Lee Sandler, New York City, for the United States.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and JONES, Judge, United States Court of Claims, sitting by designation.

BALDWIN, Judge.

This appeal raises the question whether the importer of merchandise invoiced as 133 bales of greasy wool was properly assessed duty on one bale which was reported by inspecting customs personnel as missing when the shipment was released to the importer from customs custody. The Customs Court, Third Division, denied the importer's protest against such assessment[1] and this appeal ensued.

The parties stipulated at trial that the merchandise was entered on February 25, 1964; and it thereafter remained on the wharf operated by the steamship company controlling the importing vessel until released to the importer on or about February 28, 1964; and that the merchandise was all of that time in customs custody.

The official papers regarding the importation are the only evidence introduced by appellant, aside from its participation in the stipulation. These papers include a customs permit for the imported merchandise (Customs Form 7502–A). The face of that document identifies the merchandise as 133 bales of greasy wool but includes, in a space reserved for the inspector's report, the following:

> Landed, released, disposed of as directed, except as noted on the reverse. (If no exceptions show "None" in the following space.)

| 2–28–64 | G. H. Kearney |
|---------|---------------|
| Date    | Inspector     |

All of this quoted material is printed except for the date and the signature of G. H. Kearney. As indicated, the space reserved for the word "None" in the absence of any exception to the circumstances specified was left blank. On the reverse side of the permit, which printed matter at the top thereof specifies is for "REPORT OF EXCEPTIONS; OR OF WEIGHT, GAUGE OR MEASURE; OR OTHER PERTINENT INFORMATION," is the report in red ink:

WD–T & E—#75–133–B/S

Manifested—not found—1 B/S.

Appellee took testimony of a single witness, the Supervisory Customs Liquidator for the Region including Boston, where the merchandise was entered. He testified that the term "Manifested—not found" means that merchandise listed on the manifest for discharge at the particular port was not found. He further testified that merchandise is simultaneously released by the steamship company and by customs. Prior to release, the merchandise is physically in the possession of the steamship company but is technically in customs custody. The customs inspector is on the pier and, when presented with the official papers permitting release from customs custody, he authorizes the steamship company to release the merchandise.

1. 62 Cust.Ct. 752, C.D. 3862 (1969).

In its opinion, the Customs Court noted that appellant had cited 19 USC 1499.[2] It held, however, that the section "refers more specifically to shortages in packages which is not involved in this case." The court then stated that "[t]he applicable Customs Regulation is section 15.8(a), "which, in relevant part, provides as follows:

> Allowance shall be made in the assessment of duties for lost or missing merchandise included in the entry whenever it is established to the satisfaction of the collector of customs before the liquidation of the entry becomes final that the merchandise claimed to be lost or missing was not imported.

Turning to evidence, the court, although acknowledging the report of the discharging inspector that one bale was "manifested—not found" at the time of release of the merchandise to appellant on February 28, 1964, stated that "[t]here is no evidence that 132 bales instead of 133 bales were actually landed." It seems to have distinguished this case from V. Casazza & Bro. v. United States, 15 Cust.Ct. 296, Abs. 50590 (1935),[3] where a like report regarding 16 cartons of whiskey in official papers was held sufficient to show nonimportation, on the basis that *all* of the cases of whiskey in that case were "examined as to quantity" (or contents) while only 80 bales of the wool here were sampled on the day before release. Another case where nonimportation was found, International Food Trading Co., Inc. v. United States, 33 Cust.Ct. 342, Abs. 58331 (1954) was distinguished on the ground that there was additional testimony that portions of the merchandise reported as "manifested—not found" were never received by the importer or anyone in his behalf.

We find it unnecessary to decide whether the court was correct in apparently regarding section 1499 of Title 19 as not applying to shortages in the number of items or packages manifested but only to shortages in the contents of packages that are found and inspected. In *Casazza*, the report found sufficient proof of nonimportation was the inspector's statement on the reverse side of the warehouse permit that 16 cartons were "manifested; not found". The court there referred to the early Supreme Court cases of Marriott v. Brune, 50 U.S. (9 How.) 619, 13 L.Ed. 282 (1850), and Lawder v. Stone, 187 U.S. 281, 23 S.Ct. 79, 47 L.Ed. 178 (1902) for the proposition that collection of revenue upon articles never coming into the country is "not to be countenanced where not expressed in acts of Congress, nor required to enforce just rights" (*Marriott* case, 50 U.S. at 632). We think those decisions of the Supreme Court compel the conclusion that, if the evidence establishes that the missing bale here was not imported, no duty can properly be levied on it, even if Section 1499 does not apply.

As to the matter of whether the present record establishes nonimportation, the *Casazza* case appears to be clear precedent for an affirmative answer. We do not see any merit in the Customs Court's attempt to distinguish from that case on the basis of the circumstances under which the report of goods "not found" was made. The discharging inspector here was fulfilling his duty of ascertaining whether the merchandise delivered agreed with the manifest in order to complete the report on the customs permit. The presumption is that the results he reported are accurate.

2.  19 USC 1499 sets forth requirements for delivery from customs custody of imported merchandise that is required to be inspected, examined or appraised and specifies:
    * * * If a deficiency is found in quantity, weight, or measure in the examination of any package, report

thereof shall be made to the collector, who shall make allowance therefor in the liquidation of duties.

3.  Adhered to on rehearing, 20 Cust.Ct. 290, Abs. 52238 (1948).

Of course, the report that the bale in question was not found at the time of release of the importation is not conclusive proof that it was not actually imported or landed. But in the absence of any evidence to the contrary, the logical and most likely inference in the circumstances of this case is that the bale was not found because it was not landed. Considering that the record establishes that the merchandise was in the physical possession of the steamship company, and in customs custody, up until the time the report was made and the merchandise was released to appellant, we think the only reasonable and fair conclusion is that a prima facie case of non-importation has been made.

The Customs Court stated that the customs permit bearing the "manifested —not found" notation "seems to indicate on its face that the merchandise was 'landed'." However, the court gave no reason for that conclusion, and we wholly disagree with it. The fact that the space on the face of the document where the inspector was directed to insert "none" if there were no exceptions to the goods having been "[l]anded, released or disposed of as directed" was left blank clearly indicates that there *was* an exception and directs the reader to the reverse side where the inspector is instructed to note any exception. The presence there of the notation that a bale was "not found" makes it unreasonable in our opinion to regard the permit as offering any indication that the missing bale was landed.

Although the Customs Court regarded section 15.8(a), *supra*, of the Customs Regulations as applicable here, it did not discuss the provisions of the section at all or point out any reason why it would preclude relieving appellant from payment of duty on the missing bale. Also appellee argues that section 15.8(a) is applicable but does not explain how it might bar a finding that the missing bale in this case is not dutiable. While

appellee cites decisions (two of this court or its predecessor and two of the Customs Court) in cases where it states that the government urged that allowance for a shortage was precluded in the absence of full compliance with procedural requirements of certain customs regulations, it describes the response of the courts in those cases [4] as follows:

The courts then proceeded to hold that the sole issue before them was whether or not the importer's proof was sufficient to establish the claimed non-importation as fact, there being no jurisdictional prerequisite that the importer prove compliance with the filing requirements of the Customs regulation. * * *

We are satisfied that an unrebutted prima facie case of nonimportation has been made here, and, moreover, appellee has not pointed to any "filing requirement" in section 15.8(a) as it presently reads that is unfulfilled in this case. Hence no further discussion of that section would be in point.

The judgment of the Customs Court is reversed.

Reversed.

---

4. The latest of the cited decisions, and exemplary of the group, is United States v. Browne Vintners Co., Inc., 34 CCPA 112, C.A.D. 351 (1946).