NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1041
(Serial No. 76/317,128)

IN RE DSS ENVIRONMENTAL, INC.

_____

DECIDED:  October 20, 2004

_____

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

DSS Environmental, Inc., ("DSS") seeks review of the Trademark Trial and Appeal Board's decision refusing to register its trademark, DUALSAND, on the ground that the term is merely descriptive.  Because we conclude that the Board's decision was supported by substantial evidence and was not otherwise legally erroneous, we affirm.

I

DSS filed an application with the Patent and Trademark Office to register the mark DUALSAND as used for "water and wastewater filters."  The examining attorney issued an office action requiring DSS to provide additional information consisting of

"samples of advertisements or promotional materials for the goods" and, if promotional materials were unavailable, to provide a description of the "nature, purpose, and channels of trade of the goods identified in the application."

Relying on dictionary definitions of "dual" and "sand" and on two utility patents, the examining attorney concluded that "[a]bsent any limitations in the identification of the goods, it is presumed that the applicant's 'water and wastewater filters' are used in dual sand filtration systems." Accordingly, the examining attorney concluded that the term DUALSAND was "merely descriptive of the identified goods" under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1).

DSS responded that the term DUALSAND was not descriptive, but instead was "merely suggestive" of DSS's goods. DSS provided a list of third-party registrations containing either the word "sand" or the word "dual" to illustrate how each word could be used in a permissibly suggestive manner. DSS also argued that the term DUALSAND is registrable because it is an invented mark creating a unique commercial impression and because "DUALSAND is merely a small component of the entire wastewater filtration system." In support, DSS provided a list of third-party registrations describing components of goods and services as well as a list of third-party registrations describing "at least one attribute of [the registered] goods . . . ."

In the final office action, the examining attorney refused to register the proposed mark. Relying on 13 articles found on the Internet, she concluded that "'dual sand' is a term-of-art in the wastewater and water treatment industry used to describe a specific filtration process." In reaching that conclusion, the examining attorney cited four articles to show how the terms "dual sand filters," "dual sand filtration system," and "dual sand

04-1041                                          2

filtration process" are used in the wastewater treatment industry. The examining attorney also refused to consider the list of third-party registrations that DSS submitted, because DSS did not provide copies of the registrations in order to make them of record.

DSS appealed to the Trademark Trial and Appeal Board, which upheld the examining attorney's rejection of the proposed mark based on descriptiveness and her refusal to consider DSS's list of third-party registrations. Based on the two utility patents and the 13 articles from the Internet, the Board found that dual sand "is a term used in the water and wastewater treatment industries to describe a type of filtration process." The Board stated that DUALSAND "immediately conveys that the filters are for the use in the 'dual sand filtration' system or process." The Board explained that it was unnecessary to analyze the component words "dual" and "sand" separately because the words together convey information about the goods. "Far from being unique in commercial impression," the Board stated, "applicant's term is already in use by others in the water and wastewater treatment industry . . . ." Accordingly, the Board held that the term DUALSAND is descriptive and therefore unregistrable.

The Board also rejected DSS's argument that the examining attorney should have considered DSS's list of third-party registrations. The Board pointed out that DSS was not entitled to have those registrations considered, because DSS had failed to submit copies of the actual registrations or their electronic equivalents, as was required by the rules of practice applicable to trademark registration proceedings. The Board added that even if it had considered those registrations, it still would have found DSS's mark to be descriptive.

II

On appeal to this court, DSS contends that the term DUALSAND is not merely descriptive and that the Board should have considered its list of third-party registrations.

A

Pursuant to 15 U.S.C. § 1052(e)(1), the PTO may refuse to register a mark if the mark, "when used on or in connection with the goods of the applicant," is "merely descriptive" of the applicant's goods. A mark is merely descriptive if it "would immediately convey to one seeing or hearing it the thought of appellant's services." In re Bed & Bath Breakfast Registry, 791 F.2d 157, 159 (Fed. Cir. 1986), quoting In re Am. Soc'y of Clinical Pathologists, Inc., 442 F.2d 1401, 1407 (CCPA 1971); see also In re Gyulay, 820 F.2d 1216, 1217 (Fed. Cir. 1987) ("Whether a given mark is suggestive or merely descriptive depends on whether the mark 'immediately conveys . . . knowledge of the ingredients, qualities, or characteristics of the goods . . . with which it is used'"), quoting In re Quik-Print Copy Shops, Inc., 616 F.2d 523, 525 (CCPA 1980). A term may be either descriptive or suggestive depending on its usage, the context, and other factors affecting the purchasing public's perception of the term. In re Nett Designs, Inc., 236 F.3d 1339, 1341 (Fed. Cir. 2001), citing Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786 (5th Cir. 1983).

Substantial evidence supports the Board's determination that the term DUALSAND is descriptive of the goods in this case. Thirteen articles from the Internet and two utility patents, including DSS's own patent, support the finding that the mark immediately conveys to prospective customers that DSS's goods feature wastewater filters. The articles show the terms "dual sand filters" and "dual sand filtration" being

used with reference to the water and wastewater treatment industry. DSS's patent uses the term "dual sand-filtration system" to describe an invention that treats wastewater by using two filters connected in series, "[t]he first sand-filter unit compris[ing] large-grained sand," and "[t]he second sand-filter unit compris[ing] a fine-grained sand" and "receiv[ing] its influent from effluent weir of the first sand-filter unit." The record also includes a utility patent that covers a "dual sand removal chamber" used for removing solids from wastewater. Accordingly, the evidence supports the Board's conclusion that DUALSAND is a descriptive term as used in the water and wastewater filtration industry.

DSS argues that "dual sand" is not a descriptive term as used in the water and wastewater filtration industry, because the term does not have one specific meaning but is subject to multiple interpretations. DSS contends that the references cited by the examining attorney used the term "dual sand" to describe different types of water and wastewater filter systems, including systems that use two filters or just one and systems that are delivered to purchasers with or without sand. DSS also contends that the third-party utility patent's "dual sand removal chamber" lacks filters and instead uses two settling chambers to remove solids from what DSS described in its brief as "unfiltered waste water." DSS further points to use of the term "dual sand" outside of the wastewater filtration context, citing as an example the use of "dual sand connections" to provide traction in locomotives. Based on that evidence, DSS argues that the combination of the words "dual" and "sand" is a "fairly common occurrence, ranging in a number of meanings that do not identify the same noun, system, or concept." Because DUALSAND "does not have a commonly understood meaning," DSS argues, the mark

is not a term of art and cannot convey an immediate idea of the characteristics of the goods.

While the term "dual sand" may refer to different types of wastewater filters and filtration systems, the term is nonetheless descriptive of a wastewater filter or filtration system. The differences among such systems relate primarily to the number of filters being used, but the differences do not prevent the term from being descriptive as used in this case. In all cases, "dual sand" describes filters and filtration systems that are used for treating water and wastewater. To the extent that the third-party utility patent does not use "dual sand" to refer specifically to filters, the patent still helps to demonstrate that the use of the term "dual sand" is descriptive of treatment technologies in the wastewater treatment industry. Other items to which DSS argues the term "dual sand" can refer, such as "dual sand connections" in the context of locomotives, are irrelevant in the context of DSS's goods. Accordingly, we affirm the Board's finding that the term DUALSAND is descriptive.

In addition to its central argument pertaining to descriptiveness, DSS makes three additional arguments. First, DSS argues that the articles in the record lack credibility because their source was the Internet. However, the examining attorney was not relying on the articles for their accuracy, but merely to ascertain how the term "dual sand" is used in the context of water wastewater filtration. In making such a determination, the examining attorney may obtain evidence from "any competent source, such as dictionaries, newspapers, or surveys." Bed & Breakfast Registry, 791 F.2d at 160, citing Northland Aluminum Prods., Inc., 777 F.2d 1556, 1559 (Fed. Cir. 1985); see also Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 641 (Fed. Cir. 1991)

("Evidence of purchaser understanding may come from direct testimony of consumers, consumer surveys, dictionary listings, as well as newspapers and other publications."). The Internet articles in this case, including on-line copies of newspaper articles, fully satisfy that requirement.

Second, DSS argues that ten of the article references do not provide sufficient information to clarify the actual meaning of the term "dual sand." However, there is no requirement that, in order to show that a mark is merely descriptive, each reference must clarify the meaning of a proposed mark. An examining attorney only needs to provide references showing that a prospective purchaser would understand the descriptive significance of the term. See In re MBNA Am. Bank, N.A., 340 F.3d 1328, 1332 (Fed. Cir. 2003) ("The perception of the relevant purchasing public sets the standard for determining descriptiveness"), citing In re Nett Designs, Inc., 236 F.3d 1339, 1341 (Fed. Cir. 2001). All ten articles show how the term is used to describe filters or filtration in the wastewater treatment industry, and they demonstrate that a prospective purchaser of a wastewater filter would readily recognize the descriptive significance of DUALSAND when used in connection with the identified goods.

Third, DSS argues that, with respect to its own patent, the term "dual sand" was not used in a descriptive manner, because the term appeared only once in the "Background of Invention" section of the patent. Had it actually been a descriptive term, DSS argues, "dual sand" would have appeared throughout the patent instead of just once. DSS's argument fails. Whether a term is descriptive does not depend on how frequently it is used within a reference. A reference provides sufficient support for descriptiveness if it shows that a term has descriptive significance to the purchasing

public.  See MBNA Am. Bank, 340 F.3d at 1332.  DSS's patent shows that the use of the term "dual sand" has descriptive significance.  In the Background of Invention section, DSS's patent states that a "dual sand-filtration system affords an outstanding level of removal of phosphorus, total suspended solids, turbidity and biochemical oxygen demand (BOD5)."  Prior to that statement, the patent does not describe the filtration system as using two filter tanks or two types of sand.  That description does not appear until three paragraphs later.  The use of term "dual sand" in the patent is thus clearly descriptive.

B

We turn next to DSS's argument that the PTO should have considered DSS's list of third-party registrations.  DSS characterizes its failure to submit physical copies of the registrations from its list as "a harmless procedural error," contending that the PTO's requirement for copies constitutes an arbitrary policy that denied DSS due process.  We disagree.

The Trademark Manual of Examining Procedure ("TMEP"), Trademark Trial and Appeal Board Manual of Procedure ("TBMP"), and relevant case law all make clear that merely listing third-party registrations is not sufficient to make them of record; rather, trademark applicants must submit actual copies of registrations or their electronic equivalents.  TMEP § 710.03; TBMP § 703.02(b); In re Volvo Cars of N. Am., Inc., 46 USPQ2d 1455, 1461 (TTAB 1998) ("copies of the official records themselves, or the electronic equivalent thereof, that is, printouts of the registrations taken from the electronic records of the Patent and Trademark Office's own data base, must be submitted"), citing In re Smith & Mehaffey, 13 USPQ2d 1531, 1532 n.3 (TTAB 1994).  In

its brief, the PTO provides a rationale for the policy, explaining that given the high volume of applications with which each examiner works, an expectation that examiners should bear the burden of printing copies of listed registrations is unreasonable. In light of that rationale, we cannot find that the policy itself was so arbitrary as to constitute a denial of due process. In any event, DSS had an opportunity to submit copies of the third-party registrations after the PTO issued its final action and prior to filing its notice of appeal with the Board, but it failed to do so. And finally, DSS has failed to show that the rejection of the third-party registrations prejudiced it, because the Board explained that it would have reached the same conclusion with respect to the descriptiveness of the mark even if it had considered the third-party registrations. Accordingly, we uphold the Board's refusal to consider the third-party registrations, and we sustain the Board's decision rejecting DSS's registration application.