# United States Court of Appeals for the Federal Circuit

———————————

**ZHENG CAI, DBA TAI CHI GREEN TEA INC.,**
*Appellant*

**v.**

**DIAMOND HONG, INC.,**
*Appellee*

———————————

2018-1688

———————————

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92062714.

———————————

Decided: August 27, 2018

———————————

ZHENG CAI, Vernon Hills, IL, pro se.

JONATHAN E. MOSKIN, Foley & Lardner LLP, New York, NY, for appellee. Also represented by DIANE GRACE ELDER, Chicago, IL.

———————————

Before PROST, *Chief Judge,* WALLACH and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Zheng Cai DBA Tai Chi Green Tea Inc. ("Mr. Cai") appeals an opinion of the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") cancelling registration of his mark "WU DANG TAI CHI GREEN TEA" due to a likelihood of confusion with Appellee Diamond Hong, Inc.'s ("Diamond Hong") registered mark, "TAI CHI," pursuant to 15 U.S.C. § 1052(d) (2012). *See Diamond Hong, Inc. v. Zheng Cai*, Cancellation No. 92062714, 2018 WL 916315, at *5–8 (T.T.A.B. Feb. 14, 2018); *see also* 15 U.S.C. § 1052(d) (providing a mark may not be placed on the principal register if it so resembles a mark already registered "as to be likely . . . to cause confusion"). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) (2012). We affirm.

## DISCUSSION

Diamond Hong petitioned for cancellation of Mr. Cai's mark based on a likelihood of confusion with its registered TAI CHI mark. *See* Appellee's Suppl. App. 23. The TTAB found likelihood of confusion, giving limited consideration to Mr. Cai's briefing because it "contraven[ed]" certain provisions of the Trademark Trial and Appeal Board Manual of Procedure ("TBMP"). *Diamond Hong*, 2018 WL 916315, at *3, *5−7.[1]

Mr. Cai appeals the TTAB's evidentiary ruling excluding evidence in his main brief, and its finding of likelihood of confusion. *See* Appellant's Br. 2–3. We address each argument in turn.

---

[1]   The TTAB also made prerequisite findings on standing and priority of use in Diamond Hong's favor that are not challenged on appeal. *See Diamond Hong*, 2018 WL 916315, at *4. *See generally* Appellant's Br.

## I. The TTAB's Evidentiary Ruling

### A. Standard of Review

We review TTAB evidentiary rulings for abuse of discretion. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1363 (Fed. Cir. 2012). "We will reverse only if the [TTAB]'s evidentiary ruling was: (1) clearly unreasonable, arbitrary, or fanciful; (2) based on an erroneous conclusion of law; (3) premised on clearly erroneous findings of fact; or (4) the record contains no evidence on which the [TTAB] could rationally base its decision." *Id.* (internal quotation marks, brackets, and citation omitted).

### B. The TTAB Did Not Abuse Its Discretion in Excluding Mr. Cai's Evidence

The TTAB considered the arguments presented in Mr. Cai's Main Brief but did not "consider[] the factual assertions and 'figures' displayed and discussed in [Mr. Cai's] brief, which are not evidence introduced into the trial record." *Diamond Hong*, 2018 WL 916315, at *3; *see* Appellee's Suppl. App. 69−75 (Mr. Cai's Main Brief); *see also* 37 C.F.R. §§ 2.126(a)(1), 2.128(b) (2016) (setting forth rules for submission of briefs to the TTAB). The TTAB also did not consider Mr. Cai's reply brief because the TMBP does not provide for such filings and gives the TTAB broad discretion in considering them. *Diamond Hong*, 2018 WL 916315, at *3 (citing TBMP § 801.02(d) (June 2017) ("There is no provision for filing a reply brief, rebuttal brief, rejoinder brief, etc. by a party in the position of defendant. If a party in the position of defendant files such a brief, it may be stricken, or given no consideration, by the [TTAB].")). The TTAB therefore stated that Mr. Cai "introduced no evidence." *Id.*

Mr. Cai contends that the TTAB improperly excluded evidence submitted in his briefs. Appellant's Br. 2–3. We disagree.

Although the procedural guidelines in the TBMP do not have the force of law, *see* TBMP Introduction (explaining that "[t]he manual does not modify, amend, or serve as a substitute for any existing statutes, rules, or decisional law and is not binding upon the [TTAB or] its reviewing tribunals"), the TBMP is accorded a degree of deference to the extent that it has the "power to persuade," *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (internal quotation marks and citation omitted); *see id.* (describing agency manuals as documents that "lack the force of law," but are still "entitled to respect" (internal quotation marks and citation omitted)). Indeed, we have affirmed the TTAB's determinations, specifically with regard to evidence admission, where they are clearly in line with the language of the TBMP. *See, e.g.*, *Bishop v. Flournoy*, 319 F. App'x 897, 899–900 (Fed. Cir. 2009) (agreeing with the TTAB that it was not required to consider certain evidence based on TBMP guidelines); *In re DSS Envtl., Inc.*, 113 F. App'x 902, 907 (Fed. Cir. 2004) (similar); *see also Am. Rice, Inc. v. Dunmore Props. S.A.*, 353 F. App'x 428, 432 (Fed. Cir. 2009) (affirming a TTAB determination based on the TBMP concerning denial of a motion for time to conduct discovery).

The TTAB did not abuse its discretion in determining that Mr. Cai submitted no evidence. With respect to Mr. Cai's Main Brief, the TBMP provides that evidentiary matters are resolved in accordance with the "Federal Rules of Evidence, the relevant portions of the Federal Rules of Civil Procedure, the relevant provisions of Title 28 of the United States Code, and the rules of practice in trademark cases (i.e., the provisions of Part 2 of Title 37 of the Code of Federal Regulations)." TBMP § 702.02. Mr. Cai's Main Brief contains numerous assertions of fact. *See, e.g.*, Appellee's Suppl. App. 71 ("Our Green Tea is so Unique in the US Market that no Any [sic] Other Green Tea is Comparable to Ours."). This information is not evidence under any of the relevant rules, as the TTAB

recognized. *See Diamond Hong*, 2018 WL 916315, at \*3 (citing *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence.")).

With respect to his Reply Brief, the plain language of the TBMP states that the TTAB is not required to permit "a party in the position of defendant" to file a reply brief. TBMP § 801.02(d); *see Odom's Tenn. Pride Sausage, Inc. v. FF Acquisition, L.L.C.*, 600 F.3d 1343, 1346 (Fed. Cir. 2010) (stating that we give the TTAB significant latitude in applying the TBMP when the language therein is "permissive"). Because Diamond Hong initiated the cancellation proceedings by filing a petition, *see* Appellee's Suppl. App. 23, Mr. Cai was in the position of a defendant, and was therefore not entitled to file a reply brief, *see* TBMP § 801.02(d). Accordingly, the TTAB did not abuse its discretion in applying the TBMP and excluding Mr. Cai's submissions.

## II. Likelihood of Confusion

### A. Standard of Review and Legal Standard

We review the TTAB's legal conclusions de novo and its findings of fact for substantial evidence. *In re N.C. Lottery*, 866 F.3d 1363, 1366 (Fed. Cir. 2017). "Substantial evidence is 'such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.'" *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir. 2014) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "Where two different conclusions may be warranted based on the evidence of record, the [TTAB]'s decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citation omitted).

Section 1052(d) provides that a trademark may be refused if it

> [c]onsists of or comprises a mark which so resembles a mark registered in the [USPTO], or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, *to cause confusion*, or to cause mistake, or to deceive.

15 U.S.C. § 1052(d) (emphasis added).  In *Application of E.I. DuPont DeNemours & Co.*, our predecessor court articulated thirteen factors to consider when determining likelihood of confusion ("*DuPont* factors").  *See* 476 F.2d 1357, 1361 (CCPA 1973).[2]  "Not all of the *DuPont* factors are relevant to every case, and only factors of significance to the particular mark need be considered."  *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010) (citation omitted).  "Likelihood of confusion is a question of law with underlying factual findings made pursuant to the *DuPont* factors." *Stone Lion Capital Partners*, 746 F.3d at 1321 (citation omitted); *see Herbko Int'l, Inc. v. Kappa*

---

[2]    The thirteen factors are as follows: (1) similarity of the marks; (2) similarity and nature of goods described in the marks' registrations; (3) similarity of established trade channels; (4) conditions of purchasing; (5) fame of the prior mark; (6) number and nature of similar marks in use on similar goods; (7) nature and extent of actual confusion; (8) length of time and conditions of concurrent use without evidence of actual confusion; (9) variety of goods on which mark is used; (10) market interface between applicant and owner of a prior mark; (11) extent to which applicant has a right to exclude others from use of its mark; (12) extent of potential confusion; and (13) any other established probative fact on effect of use.  *See Application of E.I. DuPont*, 476 F.2d at 1361.

*Books, Inc.*, 308 F.3d 1156, 1165 (Fed. Cir. 2002) ("[A] showing of actual confusion is not necessary to establish a likelihood of confusion." (citation omitted)). "This court reviews the [TTAB]'s factual findings on each *DuPont* factor for substantial evidence, and its legal conclusion of likelihood of confusion de novo." *Stone Lion Capital Partners*, 746 F.3d at 1321 (citations omitted).

### B. The TTAB Did Not Err in Finding Likelihood of Confusion Between the Two Marks

In its likelihood of confusion analysis, the TTAB considered the first three *DuPont* factors, treating the rest as neutral because neither party submitted evidence related to them. *Diamond Hong*, 2018 WL 916315, at *5–8 (considering similarity of the marks, similarity and nature of goods described in the marks' registrations, and similarity of trade channels). Mr. Cai argues the TTAB improperly weighed these three *DuPont* factors to arrive at an incorrect conclusion regarding likelihood of confusion. *See* Appellant's Br. 11−19. We disagree with Mr. Cai.

Substantial evidence supports the TTAB's findings with respect to each *DuPont* factor, and the TTAB did not err as to its ultimate conclusion of likelihood of confusion. We analyze the factors in the same order as the TTAB: similarity of the nature of the goods, similarity of established trade channels, and similarity of the marks. *See Diamond Hong*, 2018 WL 916315, at *5–8. With respect to the similarity and nature of the goods, the goods covered by each mark overlap. Mr. Cai's WU DANG TAI CHI GREEN TEA mark identifies the goods as "Green tea; Tea; Tea bags." Appellee's Suppl. App. 14. In turn, among many goods identified in its registration, Diamond Hong's TAI CHI mark identifies "tea." *Id.* at 15. Given this plain overlap, the TTAB's determination that the "parties' goods . . . are identical in part" is supported by substantial evidence. *Diamond Hong*, 2018 WL 916315, at *6.

With respect to similarity of the established trade channels through which the goods reach customers, the TTAB properly followed our case law and "presume[d] that the identical goods move in the same channels of trade and are available to the same classes of customers for such goods—here, general consumers who consume or purchase tea." *Id.*; *see In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) ("[I]t is well established that, absent restrictions in the application and registration, [identical] goods and services are presumed to travel in the same channels of trade to the same class of purchasers." (internal quotation marks and citation omitted)). As discussed above, the marks cover identical goods, tea, *compare* Appellee's Suppl. App. 14, *with id.* at 15, and therefore this presumption attaches, *see In re Viterra*, 671 F.3d at 1362. Mr. Cai failed to produce evidence to rebut this presumption. *See* Appellant's Br. 16−19 (making arguments without citing evidence concerning trade channels).

With regard to the similarity of the marks themselves, we have stated the TTAB must examine "the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation[,] and commercial impression." *In re Viterra*, 671 F.3d at 1362 (internal quotation marks and citation omitted). "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs.*, 668 F.3d at 1368 (internal quotation marks and citation omitted). "[W]here . . . the goods at issue are identical, the degree of similarity necessary to support a conclusion of likely confusion declines." *In re Viterra*, 671 F.3d at 1363 (internal quotation marks and citation omitted).

The marks are similar, when considered as a whole, because they both invoke a large yin-yang symbol and prominently display the term TAI CHI. Specifically, the

WU DANG TAI CHI GREEN TEA mark is described as follows:

> [t]he color(s) green and white is/are claimed as a feature of the mark. . . . The mark consists of a circle outlined in green, that divides to be half green and half white, with a single dot located at each half with the opposite color; on the top of the mark, it has words "Tai Chi Green Tea"; at the bottom of the mark, it has words "Wu Dang."

Appellee's Suppl. App. 14. Similarly, the TAI CHI mark is presented in the following terms: "[t]he mark consists of a man engaged in a tai chi position atop a yin-yang symbol with the term 'Tai Chi' below the symbol and a Chinese character on each side of the symbol." *Id*. at 15. The fact that color is not claimed as a feature of Diamond Hong's mark, *id*., further highlights the likelihood of confusion because, as the TTAB correctly identified, Diamond Hong's mark "could be presented in a green-and-white color scheme like [Mr. Cai's] mark," *Diamond Hong*, 2018 WL 916315, at *7.

Mr. Cai's arguments against these findings rehash those he made below and seek to rely on evidence either not admitted by the TTAB or not even submitted to it. *See* Appellant's Br. 11–19. We do not consider evidence that is not part of the trial record. 15 U.S.C. § 1071(a)(4) ("The United States Court of Appeals for the Federal Circuit shall review the decision from which the appeal is taken *on the record before the United States Patent and Trademark Office*." (emphasis added)). Therefore, the TTAB's findings as to the *DuPont* factors are supported by substantial evidence and the TTAB did not err in finding a likelihood of confusion.

CONCLUSION

We have considered Mr. Cai's remaining arguments and find them unpersuasive. The Opinion of the U.S.

Patent and Trademark Office's Trademark Trial and Appeal Board is

**AFFIRMED**

COSTS

No costs.