This Opinion is a
Precedent of the TTAB

Hearing: November 15, 2022                                          Mailed: May 4, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*Rebecca Curtin*

*v.*

*United Trademark Holdings, Inc.*

———

Opposition No. 91241083

———

John C. Stringham and Matthew A. Barlow of Workman Nydegger
   for Rebecca Curtin.

Erik M. Pelton of Erik M. Pelton & Associates PLLC
   for United Trademark Holdings, Inc.

—————

Before Adlin, Lynch and Dunn, Administrative Trademark Judges.

Opinion by Adlin, Administrative Trademark Judge:

The Board, *sua sponte*, bifurcated this case into "two separate trial phases." 49

TTABVUE 6-7.[1] The first trial phase concerned, and this decision addresses, only

"Opposer's entitlement to a statutory cause of action." *Id.*

---

[1] Citations to the record are to TTABVUE, the Board's online docketing system. Specifically, the number preceding "TTABVUE" corresponds to the docket entry number(s), and any number(s) following "TTABVUE" refer to the page number(s) of the docket entry where the cited materials appear.

More specifically, we address a single, threshold question: is Opposer Rebecca Curtin, as a purchaser of goods bearing the challenged mark, entitled to oppose the mark's registration under Section 13 of the Trademark Act, 15 U.S.C. § 1063, when she alleges the proposed mark is both invalid and the subject of a fraudulent application? Because our answer to this question is "no," we dismiss the opposition and do not reach the second (merits) trial phase.

## I. The Pleadings

Applicant United Trademark Holdings, Inc. seeks registration of RAPUNZEL, in standard characters, for "dolls; toy figures," in International Class 28.[2] In her second amended notice of opposition ("NOO"), Opposer alleges that RAPUNZEL is "synonymous with the name of a well-known childhood fairytale character," and that consumers will recognize it as such. 14 TTABVUE 2, 3 (NOO ¶¶ 2, 6). As grounds for opposition, Opposer alleges that RAPUNZEL not only fails to function as a trademark, but also is generic for and merely descriptive of the identified goods, and that Applicant committed fraud. *Id.* at 3, 5, 8 (NOO ¶¶ 8, 13, 20-24).[3] In its answer, Applicant denies the salient allegations in the second amended notice of opposition, and asserts "affirmative defenses" that merely amplify its denials.

---

[2] Application Serial No. 87690863, filed November 20, 2017 under Section 1(a) of the Act, based on first use dates of August 2017.

[3] Opposer also alleges that Applicant's mark is "functional under section 2(e)(5) of the Trademark Act," even though this claim was previously dismissed. 14 TTABVUE 5 (NOO ¶ 15); 12 TTABVUE 10; 13 TTABVUE 10 n.1. Opposer claims that she reasserted this dismissed claim "to preserve the right to appeal at a later date the dismissal." 13 TTABVUE 10 n.1.

At this initial stage of this bifurcated case, we need not address the ultimate merits of Opposer's claims, except to the extent those claims may bear on Opposer's entitlement to oppose the involved mark. We thus turn to Opposer's allegations in the second amended notice of opposition intended to support her claim of entitlement to a statutory cause of action.

Opposer alleges that she "is a professor of law teaching trademark law, and is also a consumer who participates amongst other consumers in the marketplace for dolls and toy figures of fairytale characters, including Rapunzel." 14 TTABVUE 6 (NOO ¶ 16). She claims that she and "other consumers will be denied access to healthy marketplace competition" for "products that represent" Rapunzel if private companies are allowed "to trademark the name of a famous fairy tale character in the public domain." *Id.* Opposer further alleges that she "and other consumers will also likely face an increased cost of goods associated with Rapunzel merchandise, given the lack of competition." *Id.* According to Opposer, "more than 171 petition signatures" support her claims of damage. *Id.* (NOO ¶ 17). To determine whether Opposer proved these allegations of entitlement, we turn to the evidentiary record.[4]

---

[4] Over four years ago, in the pleading phase of this case, the Board issued a decision denying Applicant's motion to dismiss, stating that Opposer "sufficiently alleged that she has a direct and personal stake in the outcome of the proceeding and that her belief of damage has a reasonable basis in fact." 12 TTABVUE 7. The order was based in large part, 12 TTABVUE 9, on *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999), a case that addressed a section of the Trademark Act barring registration of "immoral" or "scandalous" matter. 15 U.S.C. § 1052(a). Six months after the Board's decision on the motion to dismiss issued, the Supreme Court found the bar on registration of "immoral" or "scandalous" matter unconstitutional. *Iancu v. Brunetti*, 139 S.Ct. 2294, 2019 USPQ2d 232043 (2019). Two years after *Brunetti* was decided, and following updates to the "standard for determining whether

3

## II. The Record

The record consists of the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of Applicant's involved application. In addition, Opposer introduced her own declaration, with exhibits ("Curtin Dec."). 53 TTABVUE. Applicant chose to not introduce any testimony or other evidence. 54 TTABVUE.

## III. Entitlement-Related Facts of Record

Since 2015 Opposer has purchased "dolls, doll fashions, toys, books, e-books, and other fairytale themed items" for her daughter, "including Rapunzel dolls and toys." 53 TTABVUE 2-3, 11-59, 84 (Curtin Dec. ¶¶ 3-6 and Exs. 1-35, 37). Opposer often purchases these products online, finding them by typing "'Rapunzel' into the online search box." *Id.* at 3 (Curtin Dec. ¶ 9). Similarly, "[w]hen shopping in person [Opposer looks] for the Rapunzel name or image to locate products," or asks for "Rapunzel" dolls. *Id.* (Curtin Dec. ¶¶ 10, 11).

Opposer "believes" that if Applicant registers RAPUNZEL she "and other consumers will be denied access to healthy marketplace competition for products that represent the well-known fictional character." *Id.* at 8 (Curtin Dec. ¶ 48). She also contends that she and "other consumers" will "also likely face an increased cost of goods associated with Rapunzel merchandise, given the lack of competition." *Id.* (Curtin Dec. ¶ 49).

---

a party is eligible to bring a statutory cause of action," the Board denied Opposer's motion for summary judgment on her entitlement to bring a statutory cause of action, and bifurcated this case requiring that Opposer's entitlement be tried first, before the merits. 49 TTABVUE 5-7.

Furthermore, Opposer "believes" that registration of Applicant's mark "could chill the creation of new dolls and toys by fans of the Rapunzel fairytale, crowding out the substantial social benefit of having diverse interpreters of the fairy tale's legacy," and deny Opposer and "other consumers" of "access to classic, already existing, Rapunzel merchandise." *Id.* at 9 (Curtin Dec. ¶¶ 50, 51). Opposer introduced a petition with 432 signatures from people who share Opposer's "belief that registration of [Applicant's proposed mark] would adversely impact a consumer's ability to find dolls depicting the Rapunzel character, and would also harm marketplace competition for dolls personifying the Rapunzel character." *Id.* at 9, 61-83 (Curtin Dec. ¶ 52 and Ex. 36).

## IV. Is Opposer Entitled to a Statutory Cause of Action?

Entitlement to the statutory cause of action invoked (e.g., opposition or cancellation) is a requirement in every inter partes case. *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020), *cert. denied*, 142 S.Ct. 82 (2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26, 109 USPQ2d 2061 (2014)). A plaintiff may oppose registration of a mark when doing so is within the zone of interests protected by the statute and she has a reasonable belief in damage that would be proximately caused by registration of the mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at * 6-7 (Fed. Cir. 2020), *cert. denied*, 141 S.Ct. 2671 (2021) (holding that the test in *Lexmark* is met by demonstrating a real interest in opposing or cancelling a registration of a mark, which satisfies the zone-of-interests requirement, and a reasonable belief in damage by the registration of a mark, which

demonstrates damage proximately caused by registration of the mark). *Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 2022 USPQ2d 602, at *3-4 (Fed. Cir. 2022) ("While the zone-of-interest test is not especially demanding … it nonetheless imposes a critical requirement.") (cleaned up).

Here, Opposer has failed to prove she is entitled to the statutory cause of action she invoked – opposing registration of Applicant's mark. The essential problem is that mere consumers such as Opposer are generally not statutorily entitled to oppose registration under 15 U.S.C. § 1063.

## A. The Statute Does Not Entitle Opposer to Oppose Registration Unless Her "Real Interest" Is Commercial

In *Lexmark*, the Supreme Court pointed out that "[w]hether a plaintiff comes within the 'zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 109 USPQ2d at 2067. Thus we turn, as *Lexmark* did, to the statute conferring the cause of action in question, in our case 15 U.S.C. § 1063, which entitles "[a]ny person who believes that [she] would be damaged by the registration of a mark" to oppose it.[5]

While that language is quite broad, and might seemingly apply to "all factually injured plaintiffs," it does not, and 15 U.S.C. § 1063 "should not get such an expansive reading." *See Lexmark*, 109 USPQ2d at 2067 (addressing similar language in 15

---

[5] *Lexmark* involved a false advertising counterclaim under 15 U.S.C. § 1125(a), pursuant to which "any person who believes that he or she is or is likely to be damaged" is entitled to the cause of action.

U.S.C. § 1125(a)(1) and quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 266 (1992)). Rather, "a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked,'" in this case, as in *Lexmark*, the Trademark Act. *Lexmark*, 109 USPQ2d at 2068 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

"Identifying the interests protected by" the Trademark Act "requires no guesswork," *Lexmark*, 109 USPQ2d at 2068, because the Act itself identifies those interests in Section 45, which states the Act's purpose:

> The **intent of this chapter is to regulate commerce within the control of Congress** by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; **to protect persons engaged in such commerce against unfair competition**; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127 (emphasis added). Thus, the Trademark Act regulates commerce and protects plaintiffs with commercial interests.[6]

---

[6] Unlike the plaintiff's ground for opposition in *Ritchie*, 50 USPQ2d at 1023, Opposer's grounds for opposition in this case arise out of the Trademark Act's "intent" to "protect persons engaged in … commerce against unfair competition." 15 U.S.C. § 1127. *See generally In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 217 (CCPA 1978) (a "major reason" for not protecting merely descriptive marks is "to prevent the owner of a [merely descriptive] mark from inhibiting competition").

The Supreme Court's review of this statement of purpose led it to hold, in *Lexmark*, that "to come within the zone of interests in a suit" under Section 43(a)(1) of the Trademark Act, 15 U.S.C. § 1125(a)(1) – which, similar to Section 13, may be invoked only by a plaintiff "who believes that he or she is or is likely to be damaged" by the challenged act – "**a plaintiff must allege an injury to a commercial interest in reputation or sales**." *Lexmark*, 109 USPQ2d at 2069 (emphasis added). The Court specifically stated that while consumers "may well have an injury-in-fact" caused by violations of the Trademark Act, they "cannot invoke the protection" of the statute based solely on injuries suffered as consumers, "a conclusion reached by every Circuit to consider the question." *Id.* ("Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis.").[7] *See also Meenaxi*, 2022 USPQ2d 602, at \*7 ("Coca-Cola failed to explain how its supposed reputational injury adversely affected its commercial interests other than to speculate that a consumer dissatisfied with Meenaxi's products might blame Coca-Cola."); *Corcamore*, 2020 USPQ2d 11277, at \* 7 (a plaintiff "can satisfy the real-interest test by demonstrating a commercial interest"); *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) (finding entitlement to the statutory cause of action of cancellation because "Cubatabaco has

---

[7] *Lexmark* cites the following circuit court decisions under 15 U.S.C. § 1125(a) that reveal unanimity among "every Circuit to consider the question": *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1170 (11th Cir. 2007); *Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F. 3d 278, 281 (4th Cir. 2004); *Procter & Gamble Co. v. Amway Corp.*, 242 F. 3d 539, 563-564 (5th Cir. 2001); *Barrus v. Sylvania*, 55 F. 3d 468, 470 (9th Cir. 1995); *Serbin v. Ziebart Int'l Corp.*, 11 F. 3d 1163, 1177 (3rd Cir. 1993); *Colligan v. Activities Club of N. Y., Ltd.*, 442 F. 2d 686, 691-692 (2nd Cir. 1971).

a legitimate commercial interest in the COHIBA mark"). *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 110 USPQ2d 1877, 1880 (2014) (stating, in the context of a false advertising claim, that "[t]hough in the end consumers also benefit from the Act's proper enforcement, the cause of action [for unfair competition through misleading advertising or labeling] is for competitors, not consumers"). Over 40 years ago, the Board foreshadowed these holdings, finding it "evident that a petitioner must establish a **viable commercial interest** in the subject matter of cancellation." *Miller v. B & H Foods, Inc.*, 209 USPQ 357, 360 (TTAB 1981) (emphasis added).[8] *Cf. Ahal Al-Sara Grp. for Trading v. American Flash, Inc.*, 2023 USPQ2d 79, at *7-9 (TTAB 2023) ("a foreign plaintiff cannot establish entitlement to an abandonment or

---

[8] Throughout her Trial Brief, Opposer analogizes entitlement to a Trademark Act cause of action to "standing" under the Clayton Antitrust Act, arguing that consumers have standing under the Clayton Act, and should therefore also be entitled to Trademark Act causes of action. 55 TTABVUE 13, 15, 17. We are not persuaded by the analogy or the argument. The analogy is untenable because even if we found the statutes similar or analogous, which we do not, in *Lexmark* the Supreme Court instructs us to focus on the Trademark Act, including 15 U.S.C. §§ 1063 and 1127, in assessing entitlement to a Trademark Act cause of action. Moreover, Opposer's argument is at best overstated, and it is not clear that Opposer would be entitled to a Clayton Act cause of action. In fact, in *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529 (1983), the Supreme Court recognized that Section 4 of the Clayton Act, read literally, is "broad enough to encompass every harm that can be attributed directly or indirectly to the consequences of an antitrust violation." Nonetheless, the Court went on to analyze whether the claimed injury "was of a type that Congress sought to address." *Id.* at 538; *see also Philanthropist.com, Inc. v. The General Conference Corp. of Seventh-Day Adventists*, 2021 USPQ2d 643, at *16 (TTAB 2021) (considering whether it can be "assumed Congress intended to authorize a party in Petitioner's circumstances to bring and maintain these cancellation proceedings") (citing *Corcamore*, 2020 USPQ2d 11277, at *7), *aff'd*, 2022 WL 3147202 (Fed. Cir. 2022). To answer this question, the Supreme Court in *Associated Gen. Contractors* specifically considered, *inter alia*, "the directness or indirectness of the asserted injury," 459 U.S. at 540, and whether the claimed damages were "highly speculative." *Id.* at 542. Here, as explained below, even if Opposer's alleged injury is "direct" (despite being merely anticipated, rather than existing), her specific claims of harm are "highly speculative" and unsupported by evidence.

fraud claim based solely on its foreign rights, **without any claim or interest related to U.S. commerce**") (emphasis added).

There is no question that *Lexmark*'s holdings on entitlement to a statutory (Trademark Act) cause of action apply to opposition proceedings such as this one. Indeed, not only was *Lexmark* based on the Trademark Act's statement of purpose, but the Federal Circuit recently found "no principled reason why the analytical framework articulated by the Court in *Lexmark* should not apply to [15 U.S.C.] § 1064," *Corcamore*, 2020 USPQ2d 11277, at *6, a statute which concerns cancellation proceedings and, like opposition proceedings under 15 U.S.C. § 1063, is limited to persons "who believe[ ] that he is or will be damaged" by registration. *See also Spanishtown Ent., Inc. v. Transcend Resources, Inc.*, 2020 USPQ2d 11388, at *1-2 (TTAB 2020).

### B. Opposer Has Not Established a Commercial Interest or Injury Merely By Virtue of Being a Consumer of RAPUNZEL Goods

All of the facts Opposer alleged, and all of the evidence she submitted, relate to her being a consumer of fairytale-themed products. Nowhere has Opposer alleged or established the requisite commercial interest or injury. Rather, Opposer has only alleged and proved that she is a purchaser of goods related to the Rapunzel fairytale. *Lexmark* makes clear, however, that "[e]ven a business" that buys goods or services "is, like consumers generally, not under the Act's aegis." *Lexmark*, 109 USPQ2d at 2069. A fortiori, a mere consumer that buys goods or services is not under the Trademark Act's aegis.

10

Put simply, the Trademark Act does not provide "consumer standing." That is, it does not entitle mere consumers to a statutory cause of action; a statutory cause of action is reserved for those with commercial interests. *Id.* at 2071. *See also Conte Bros. Auto, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 49 USPQ2d 1321, 1327 (3d Cir. 1998) (Alito, J.) (Section 45 of the Trademark Act "makes clear that the focus of the statute is on anti-competitive conduct in a commercial context. Conferring standing to the full extent implied by the text of § 43(a) would give standing to parties, such as consumers, having no competitive or commercial interests affected by the conduct at issue. This would not only ignore the purpose of the Lanham Act as expressed by §45, but would run contrary to our precedent ….").[9]

### C. Opposer's Alleged Damage is Too Speculative and Remote to Invoke an Opposition Proceeding

It is not enough for Opposer to have alleged her belief in damage in her notice of opposition. Rather, Opposer "must show economic or reputational injury flowing directly from" Applicant's registration of RAPUNZEL. *Lexmark*, 109 USPQ2d at

---

[9] Opposer attempts to rely on two non-precedential decisions by a single interlocutory attorney in *Flanders v. DiMarzio, Inc.*, Cancellation No. 92064181, but appears to have cited the wrong interlocutory decision in two places in her Trial Brief. 55 TTABVUE 11, 18. In any event, to the extent any non-precedential interlocutory decisions in Cancellation No. 92064181 conflict with current Supreme Court or Federal Circuit caselaw, we decline to follow them. We are bound by Supreme Court and Federal Circuit authority, but not by non-precedential interlocutory decisions. *Cf.* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 518 (2022) (citing *AS Holdings, Inc. v. H & C Milcor, Inc.*, 107 USPQ2d 1829, 1832 (TTAB 2013) and *Harley-Davidson Motor Co. v. Pierce Foods Corp.*, 231 USPQ 857, 859 n.13 (TTAB 1986)). *See also Domino's Pizza Inc. v. Little Caesar Enters. Inc.*, 7 USPQ2d 1359, 1363 n.9 (TTAB 1988) ("Th[e] statement [that evidence of third-party uses were relevant], made over the signature of a single interlocutory Attorney-Examiner of the Board, is not binding on this three-member panel, and we find ourselves in disagreement with the statement.").

2069. However, "[t]hat showing is generally not made when" a defendant's conduct "produces injuries to a fellow commercial actor that in turn affect the plaintiff. For example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties …." *Id.* at 2069-70.

Here, Opposer's limited evidence shows that the damage she believes she will suffer is too remote from registration and is entirely speculative.

For example, Opposer merely assumes that registration of RAPUNZEL will harm "healthy marketplace competition," leading to an "increased cost of goods." 53 TTABVUE 8 (Curtin Dec. ¶¶ 48, 49). Even if this assumption was an attempt to apply an accepted economic theory, there is no evidence of record about any specific economic theory, and even if there was, there is no evidence that particular markets, much less the market for the fairytale-related products at issue, always perform according to general economic theories.

Perhaps more importantly, Opposer merely assumes that, notwithstanding 15 U.S.C. § 1115(b)(4) and other defenses and protections available to sellers of the fairytale-related products at issue, Applicant will be so successful in enforcing its asserted rights that it will reduce "marketplace competition," "chill the creation of new dolls and toys" and prevent "access to classic, already existing, Rapunzel merchandise." *Id.* at 9 (Curtin Dec. ¶¶ 50, 51). This type of speculation, unsupported by any evidence, is not a basis upon which we can find that Opposer is entitled to a

statutory cause of action.[10] *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1799 (Fed. Cir. 2018) ("Attorney argument is no substitute for evidence.") (quoting *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1284, 76 USPQ2d 1616, 1622 (Fed. Cir. 2005)); *In re U.S. Tsubaki, Inc.*, 109 USPQ2d 2002, 2006 (TTAB 2014) (finding that there was no proof to support the statements in the record by counsel). *See also TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2210-12 (2021) (in context of assessing standing under Article III of the U.S. Constitution, noting problems with seeking relief for the risk of potential "future harm"); *Meenaxi*, 2022 USPQ2d 602 at *7 ("Coca-Cola did present statements regarding future plans to market Thums Up and Limca beverages more broadly in the United States, but nebulous future plans for U.S. sales cannot be the basis for a Lanham Act claim."). Opposer's allegations of damage are also too remote, because the alleged damage to Opposer depends first on the alleged effect of registration on other commercial doll makers or sellers.

## V. Conclusion

Opposer has not met her burden of proving that she is entitled to invoke the statute authorizing opposition proceedings.

**Decision**: The opposition is dismissed.

---

[10] Registration would not necessarily prevent competitors from manufacturing or selling competing dolls based on Rapunzel, a character from an 1812 Brothers Grimm fairy tale, because a trademark registration has no direct effect on what types of products are available in the marketplace. Rather, it would at most preclude others from using RAPUNZEL as their own source indicator for such products, subject to defenses such as 15 U.S.C. § 1115(b)(4) (creating a defense to infringement where the "term or device … is descriptive of and used fairly and in good faith only to describe the goods and services of such party").