# United States Court of Appeals for the Federal Circuit

---

**GAME PLAN, INC.,**
*Appellant*

**v.**

**UNINTERRUPTED IP, LLC,**
*Appellee*

---

2024-1407

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91244990.

---

Decided: December 10, 2025

---

RYAN LAURENCE JONES, Ryan L. Jones Law, LLC, Washington, DC, argued for appellant. Also represented by LOUIS S. MASTRIANI, Buchanan Ingersoll & Rooney PC, Washington, DC.

HOWARD SHIRE, Troutman Pepper Hamilton Sanders LLP, New York, NY, argued for appellee. Also represented by SEAN MCCONNELL, Philadelphia, PA.

---

Before PROST, REYNA, and CUNNINGHAM, *Circuit Judges*.

REYNA, *Circuit Judge.*

Game Plan, Inc. appeals a final decision of the Trademark Trial and Appeal Board cancelling its registration for its stylized mark—I AM MORE THAN AN ATHLETE. GP GAME PLAN—and dismissing Game Plan's opposition to Uninterrupted IP, LLC's six intent-to-use applications for marks containing I AM MORE THAN AN ATHLETE and MORE THAN AN ATHLETE. For the reasons explained below, we affirm.

## BACKGROUND

### I.

Game Plan, Inc. ("Game Plan") is a non-profit organization that aims to assist student-athletes in underserved communities. On December 28, 2016, Game Plan applied to register the following mark with the U.S. Patent and Trademark Office ("PTO"):



*See* Registration No. 5,487,497 ("Game Plan's Mark"). The PTO registered the mark on June 5, 2018. Game Plan's mark covers "[c]haritable fundraising services by means of selling t-shirts to raise funds for educational and entertainment programs." J.A. 69 (cleaned up).

Uninterrupted IP, LLC ("UNIP") is a media company that provides a platform for athletes to express their

identities beyond sports through storytelling, digital content, and apparel. In March 2018, UNIP filed six intent-to-use applications for marks incorporating the phrases I AM MORE THAN AN ATHLETE and MORE THAN AN ATHLETE in standard and stylized fonts, as shown below ("UNIP's proposed marks").[1]



UNIP's proposed marks cover clothing and entertainment services such as "a website featuring non-downloadable videos, podcasts, films and social media posts in the field of sports." J.A. 1–2.

## II.

On November 28, 2018, Game Plan initiated an opposition proceeding with the PTO Trademark Trial and Appeal Board ("Board") to oppose registration of UNIP's proposed marks. J.A. 66–69. Game Plan asserted that there was a likelihood of confusion, under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), between UNIP's proposed marks and its registered mark and that it had priority over UNIP's proposed marks. Game Plan also asserted

---

[1]    UNIP's intent to use applications correspond to U.S. Trademark Application Serial Nos. 87/828,960; 87/828,964; 87/828,965; and 87/828,966 (filed Mar. 10, 2018); 87/836,363 and 87/836,358 (filed Mar. 15, 2018) ("UNIP's applications").

common law rights as a basis for its Section 2(d) claim against UNIP's applications.

UNIP answered Game Plan's Amended Notice of Opposition on April 8, 2019. In its answer, UNIP denied any likelihood of confusion between the marks and alternatively counterclaimed to cancel Game Plan's registration under Section 2(d) of the Lanham Act. UNIP asserted that cancellation was proper because, if there was a likelihood of confusion, it had priority over Game Plan's mark based on its common law rights in the mark MORE THAN AN ATHLETE. However, UNIP acquired common law rights to the mark MORE THAN AN ATHLETE through an asset purchase agreement (the "2019 Assignment") that was executed on February 22, 2019, *after* Game Plan filed its Notice of Opposition. Relevant to this appeal, the 2019 Assignment transferred to UNIP both the mark MORE THAN AN ATHLETE and "all of the goodwill of the business related to" the mark. J.A. 152. UNIP purchased the common law rights from DeAndra Alex and her company, More Than an Athlete, Inc. ("MTAA"), which had used the mark MORE THAN AN ATHLETE since at least 2012 in connection with clothing and community events.

## III.

The case proceeded to trial before the Board, which issued findings and conclusions on the parties' claims. *See Game Plan, Inc. v. Uninterrupted IP, LLC*, No. 91244990, 2023 WL 8664497 (T.T.A.B. Dec. 14, 2023) ("*Final Decision*"). The Board's Final Decision addressed both evidentiary issues and the substantive merits of the parties' claims. First, the Board dismissed Game Plan's opposition because Game Plan had submitted no evidence at trial. Given the lack of evidence, the Board concluded that Game Plan could not maintain its Section 2(d) claims based on its common law rights alone, noting "[i]t is impossible to prevail based on a claim of common law rights in a Board

proceeding without evidence or an admission in the record establishing prior use of the mark." *Final Decision* at *3.

The Board next assessed UNIP's Section 2(d) counterclaim, focusing entirely on the issue of priority because Game Plan conceded likelihood of confusion. The Board found that UNIP acquired valid and enforceable common law rights in the mark MORE THAN AN ATHLETE from Ms. Alex and MTAA.

The Board rejected Game Plan's arguments that the assignment of MORE THAN AN ATHLETE was invalid because the rights were assigned during the litigation. Game Plan argued this was improper "because UNIP made the purchase after the start of this action, in order to litigate from a changed position." *Final Decision* at *7. The Board cited persuasive authority for the proposition that motives for assignment during litigation are not dispositive. *Id.* (citing *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1348 n.10 (E.D.N.Y. 1994) ("However, the motivation for a sale is irrelevant and senior user status may be properly achieved by assignment in anticipation or in the midst of litigation.")). The Board also rejected Game Plan's argument that UNIP's common law rights were unenforceable because it did not intend to offer certain services associated with the goodwill of the mark (e.g., publicity or charitable services). The Board explained that although UNIP may not have acquired enforceable rights in services for which it had no continuing use, the assignment of common law rights in connection with clothing was valid and sufficient to sustain its counterclaim. The Board accordingly held that UNIP had priority over Game Plan and canceled Game Plan's registration.

Game Plan timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## STANDARD OF REVIEW

We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 964 (Fed. Cir. 2015). Substantial evidence means "'such relevant evidence as a reasonable mind would accept as adequate' to support a conclusion." *Id.* (quoting *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003)). The Court reviews Board evidentiary rulings for abuse of discretion. *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1370 (Fed. Cir. 2018). We will reverse the Board's evidentiary ruling only if the ruling was: (1) clearly unreasonable, arbitrary, or fanciful; (2) based on an erroneous conclusion of law; (3) premised on clearly erroneous findings of fact; or (4) the record contains no evidence on which the Board could rationally base its decision. *Id.*

## DISCUSSION

Game Plan, Inc. raises two issues on appeal. First, it argues that the Board erred in determining that UNIP had priority over Game Plan's mark based on the 2019 Assignment of common law trademark rights. Appellant Br. 16–22. Second, it argues that the Board failed to review evidence supporting its assertion that the 2019 Assignment is invalid. Appellant Br. 22–27. We address each argument in turn.

## I.

Game Plan argues that the Board erred in determining that UNIP had priority over Game Plan's mark because the 2019 Assignment violates 15 U.S.C. § 1060(a)(1) and 37 C.F.R. § 2.133(a). Appellant Br. 1, 17. We disagree.

A.

Game Plan asserts that the 2019 Assignment violates the trademark antitrafficking rule under 15 U.S.C. § 1060(a)(1) for two reasons. First, Game Plan contends that the 2019 Assignment is an assignment in gross. Appellant Br. 13. An assignment in gross is a sale of a trade name or mark divorced from its goodwill. *See Visa, U.S.A., Inc. v. Birmingham Tr. Nat'l Bank*, 696 F.2d 1371, 1375 (Fed. Cir. 1982). Game Plan argues that such assignments violate § 1060(a)(1), which states "[a] registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used." 15 U.S.C. § 1060(a)(1). Indeed, we have similarly noted that "a trademark cannot be validly assigned unless accompanied by its goodwill garnered in the marketplace." *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996), *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996).

However, the Board's conclusion that the 2019 Assignment is not an assignment in gross and satisfies the requirement to transfer goodwill under § 1060(a)(1) is supported by substantial evidence and is otherwise not contrary to the law. First, the 2019 Assignment expressly defined the purchased assets as trademarks, among other intellectual property, "together with the goodwill of the business associated therewith." J.A. 263; *see also* J.A. 153. This evidence supports the Board's determination that the mark MORE THAN AN ATHLETE was not divorced from its goodwill when assigned. The Board also determined that the 2019 Assignment was not in gross because UNIP's use of the mark was substantially similar to Ms. Alex's use, and UNIP and MTAA shared a common purpose and audience. *Final Decision* at *8. This finding was supported by evidence that both companies used the mark in connection with the sale of t-shirts and similar clothing as "a part of a larger effort that relates to the well-being of athletes." *Id.*; *see also* J.A. 129–33, 256–58. The Board further noted that

8                    GAME PLAN, INC. v. UNINTERRUPTED IP, LLC

UNIP retained Ms. Alex as a consultant. *Final Decision* at \*7. The Board found that this evidence demonstrated continuity of goodwill associated with the acquired mark. *Id.* at \*8. We agree that the 2019 Assignment does not constitute an assignment in gross.

Second, Game Plan asserts that § 1060(a)(1) bars the 2019 Assignment. Appellant Br. 17–18. This argument lacks merit because it is based on a fundamental misunderstanding of 15 U.S.C. § 1060(a)(1). Section 1060(a)(1) provides that:

> [N]o application to register a mark under section 1051(b) of this title shall be assignable prior to the filing of an amendment under section 1051(c) of this title to bring the application into conformity with section 1051(a) of this title or the filing of the verified statement of use under section 1051(d) of this title, except for an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing.

15 U.S.C. § 1060(a)(1). Section 1060 therefore restricts the assignment of intent-to-use applications before an amendment to allege use or a verified statement of use is filed.

Here, UNIP did not *assign* its pending intent-to-use applications. Rather, it *received* an assignment of preexisting common law rights to an already-used mark. J.A. 263. Section 1060(a)(1) does not prohibit the assignment of such rights. Thus, UNIP did not violate § 1060(a)(1) when it purchased common law rights to the mark MORE THAN AN ATHLETE.

## B.

Second, Game Plan argues that the timing of the 2019 Assignment violated 37 C.F.R. § 2.133(a). Appellant Br. 17. We disagree. Section 2.133(a) governs amendments to trademark applications or registrations during

opposition and cancellation proceedings. 37 C.F.R. § 2.133(a). It provides that:

> An application subject to an opposition may not be amended in substance nor may a registration subject to a cancellation be amended or disclaimed in part, except with the consent of the other party or parties and the approval of the Trademark Trial and Appeal Board, or upon motion granted by the Board.

*Id.* Game Plan asserts that UNIP's 2019 Assignment should be treated as a substantive amendment to its six intent-to-use applications and therefore prohibited because the assignment occurred after Game Plan filed its Notice of Opposition. Appellant Br. 12. However, Game Plan cites no authority supporting its claim that the acquisition of common law trademark rights constitutes an "amend[ment] in substance" within the meaning of § 2.133(a). *Id.*

In any event, we need not resolve this question because Game Plan's argument fails for a more fundamental reason. That is, Game Plan's argument rests on the premise that the Board based its priority determination on UNIP's pending intent-to-use applications. It did not. Rather, the Board sustained UNIP's priority claim based on its ownership of common law rights in the mark MORE THAN AN ATHLETE, which independently predate Game Plan's filing date. Section 2.133(a) governs amendments to pending applications or registrations subject to cancellation; it does not govern the independent transfer or acquisition of common law rights to a mark. Thus, UNIP's common law rights would still establish priority over Game Plan's registration independent of any constraints imposed by § 2.133(a).

In sum, because the Board's decision rested on validly assigned common law rights and not on UNIP's six intent-to-use applications, any procedural limitations on

amending those applications are irrelevant to the Board's priority analysis.

## II.

Finally, Game Plan argues that the Board erred by failing to objectively review certain evidence Game Plan submitted to support its claims that UNIP's actions constituted an assignment in gross. Appellant Br. 22–29. We disagree.

Under the regulations governing trial testimony, only materials properly made of record may be considered. *See, e.g.*, 37 C.F.R. §§ 2.122, 2.123. Accordingly, parties to opposition and cancellation proceedings before the Board must comply with specific procedural requirements for introducing evidence during trial. Parties typically submit evidence during trial by notices of reliance under § 2.122(g) or by witness testimony under § 2.123. Section 2.122 identifies certain materials that are automatically included in the record, including "[t]he file of each application or registration specified in a notice of interference, of each application or registration specified in the notice of a concurrent use registration proceeding, of the application against which a notice of opposition is filed, or of each registration against which a petition or counterclaim for cancellation is filed." 37 C.F.R. § 2.122(b)(1). However, documents attached to pleadings or motions are not evidence unless properly introduced during trial. *See Cai*, 901 F.3d at 1370–71 (affirming Board's exclusion of evidence not submitted during trial).

Further, under 37 C.F.R. § 2.132(a),

[i]f the time for taking testimony by any party in the position of plaintiff has expired and it is clear to the Board from the proceeding record that such party has not taken testimony or offered any other evidence, the Board may grant judgment for the defendant.

37 C.F.R. § 2.132(a). Thus, if an opposer fails to introduce evidence during the trial period, the applicant may move to dismiss the opposition for failure of proof. *Id.*

Here, the Board found that Game Plan failed to properly introduce any evidence during its trial period, despite being clearly advised of the procedural requirements to do so. *Final Decision* at *1–3. Game Plan does not dispute this fact. Appellant Br. 13. Rather, as the Board noted, Game Plan attempted to rely on documents previously submitted with its motion for summary judgment. *Final Decision* at *1. Game Plan's attempt to rely on materials filed with its summary judgment motion and not reintroduced during the testimony period is improper. Accordingly, the Board did not abuse its discretion by declining to consider evidence that Game Plan had not entered into the trial record.[2] In sum, Game Plan was advised of the proper procedures for submitting evidence but failed to follow them, and the Board did not err by excluding evidence not submitted during the designated trial period.

---

[2]    Game Plan also argues that we can rely on judicial notice to "put into perspective" the timeline of events and all evidence to understand that UNIP's actions amounted to an assignment in gross. Appellant Br. 27–29. We decline to take this approach. Game Plan's attempt to remedy this deficiency by having this court take judicial notice of the entire underlying record is improper. Indeed, the underlying record does not satisfy the requirement of being "facts of universal notoriety, which need not be proved," nor is the record "generally known within [this court's] jurisdiction[]." *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988).

12                    GAME PLAN, INC. v. UNINTERRUPTED IP, LLC

CONCLUSION

We have considered Game Plan's remaining arguments and find them unpersuasive.  For the reasons provided, we affirm the Board's decision canceling Game Plan's registration for the mark I AM MORE THAN AN ATHLETE. GP GAME PLAN and dismissing its opposition to UNIP's intent-to-use applications.

**AFFIRMED**

COSTS

Costs against Game Plan.